Argued May 14; affirmed May 26, 1936

CABELL ET AL. *v.* CITY OF PORTLAND ET AL.

(57 P. (2d) 1292)

*Robert R. Rankin,* of Portland, for appellant.

*J. M. Devers,* Assistant Attorney General (I. H. Van Winkle, Attorney General, and J. W. DeSouza, Assistant Attorney General, on the brief) for State Highway Commission.

*Frank S. Grant,* City Attorney, of Portland, for City of Portland.

BAILEY, J. This proceeding was instituted by Henry F. Cabell, E. B. Aldrich and F. L. Tou Velle, constituting the state highway commission of the state of Oregon, against the city of Portland, a municipal

corporation, and Ross Island Sand & Gravel Company, a corporation, for a declaratory judgment to the effect that the highway commission has authority in law to do and perform the following acts:

"1. Lay out and establish highways, either primary or secondary, within the corporate limits of the city of Portland along a route, routes or locations where there are no established streets or roads.

"2. Acquire by agreement, donation, or by the exercise of the power of eminent domain rights of way for state highways (primary or secondary) within the corporate limits of said city, and pay the cost thereof with state highway funds.

"3. Acquire at state expense rights of way for widening or otherwise improving streets or roads in said city where such streets and/or roads form a link in a state highway or connect two state highways.

"4. Construct, reconstruct, pave, improve, repair and/or maintain streets and/or roads within the city of Portland under the authority and provisions of chapter 88, Oregon Laws, 1931.

"5. Select, designate, lay out, establish and adopt as a part of the East Portland-Oregon City highway the route and location described and defined in . . . plaintiffs' complaint.

"6. Use and disburse state highway funds within the corporate limits of the city of Portland for the construction, reconstruction, improvement, pavement and/or maintenance of streets or roads within the city of Portland where such streets or roads form links in, or are parts of, state highways, whether primary or secondary, and use or disburse state highway funds for the acquisition of rights of way therefor."

From a judgment and decree declaring that the state highway commission has power and authority to perform the foregoing acts within the corporate limits of the city of Portland, the defendant Ross Island Sand & Gravel Company prosecutes this appeal.

The complaint alleges, among other things, that "several of the duly established, constructed and improved primary and secondary state highways are so located and routed that they enter and pass through the city of Portland over duly established, improved and maintained streets of said city, and the highway designated by the state highway commission as the East Portland-Oregon City highway, which said highway is by the city of Portland designated as McLoughlin boulevard, is a state highway, and is also a federal highway, and said highway has been located and constructed within the corporate limits of the city of Portland from the Multnomah county line at the south city limits to the Iron Fireman factory at an intersection with Seventeenth street, and said highway from approximately the point of intersection with Seventeenth street has been located and routed by the state highway commission along" a certain designated route which is specifically described.

It is further averred that a part of the East Portland-Oregon City highway so designated is routed over private property and encroaches upon property owned by the defendant Ross Island Sand & Gravel Company; that a condemnation proceeding has been instituted to acquire a right of way over that defendant's land; that said proceeding is pending; and that the said defendant questions the right of the state highway commission to acquire said lands or to disburse funds of the state highway commission in payment for the same. It is then alleged:

"It is proposed by the highway commission to call for bids, and if a satisfactory bid is received, to award a contract for the construction of said highway over said route, and for such purpose the highway commission will take possession of the property sought to be

condemned in said pending condemnation action in advance of the trial of said cause, and should the defendant Ross Island Sand & Gravel Company appeal from the judgment entered in the trial of said cause, and as a result of said appeal the supreme court find that the highway commission was without lawful authority to acquire said property by condemnation or to pay the cost thereof out of highway funds, and was without authority to construct said highway within the corporate limits of the city of Portland, then the highway commission would be charged with proceeding unlawfully and would be charged with having disbursed highway funds without authority of law."

The city of Portland admits all the allegations of the complaint and requests that a declaratory judgment be entered in accordance with the plaintiffs' demands. The defendant Ross Island Sand & Gravel Company admits the facts stated but denies the conclusion set forth in the complaint as to the authority of the state highway commission to condemn land for highway purposes in the city of Portland, or to disburse moneys of the state in payment for rights of way over such land. It is admitted that the contemplated highway described in the complaint "forms a link" in the state highway system and that the "governing body" of the city of Portland has consented to the establishment and construction of this roadway.

The questions presented for decision on this appeal can be succinctly stated as follows: (1) Has the state highway commission authority to construct, reconstruct, pave, improve, repair and maintain roads and streets in and through incorporated cities of 100,000 or more population? (2) Has the state highway commission authority to lay out, establish, construct and maintain roads and highways within the corporate limits of cities of 100,000 or more, over routes where there are no established streets?

In 1917 the legislature passed an act known as "the Oregon highway law", chapter 237, Laws 1917, by which the state highway commission was created and its powers and duties specified. According to the provisions of this act, the state highway commission shall "designate, construct, or cause to be constructed, a system of state highways within the state of Oregon, which highways shall be designated by number and by the point of beginning and terminus thereof": § 5. Section 4 of this act provides that, "where the terms 'road' or 'highways' are used they shall be taken and deemed to include necessary bridges and culverts, and they shall not be taken or deemed to mean or include city streets. 'State highway' shall be taken and deemed to mean any road or highway designated as such by the commission or by law." The act further specifies that the right of way for state highways and roads completed or constructed under its provisions shall be acquired by the county in which the highways are situated, either by purchase, donation, agreement or condemnation. In the event of the neglect or refusal of the county to acquire such rights of way the state is granted power through the state highway commission to acquire the rights of way by any of the means through which the county could have acquired the same. In the event that the state highway commission obtains such rights of way, the county is required to reimburse it for any cost therewith connected.

In the same session, by chapter 423, Laws 1917, the legislature designated the highways to be constructed by the commission and authorized the commission to issue bonds not exceeding $6,000,000, to finance the construction of these roads and highways. Two years later the legislature authorized the commission "to designate

and define as state highways other and additional roads as from time to time they may deem of sufficient public importance, and may improve, better or pave the same": § 44-610, Oregon Code 1930.

In 1921 the highway commission was authorized and empowered to construct and pave roads and streets through incorporated cities and towns of less than 2,000 population, "provided such roads or streets form a link of the state highway or constitute a connection between two state highways". It was expressly provided that the commission should have no power to change the grade of any road or street from that established by the city or town: § 44-2702, Oregon Code 1930. This act further directed how the cost of such improvement should be divided among city, county and state: § 44-2703, Oregon Code 1930.

Chapter 88, Oregon Laws 1931, on which the plaintiffs principally rely for the authority of the commission to do the acts which the circuit court held it was empowered to do, provides as follows:

"Section 1. That the state highway commission hereby is authorized and empowered to construct, reconstruct, pave, improve, repair and maintain roads and streets through incorporated cities and towns where such roads and streets form a link in the state highway or constitute a connection between two state highways; provided, however, the state highway commission shall have no power to change any grade of any such road or street as the same shall have been established by such city or town, without the consent of the governing body of such city or town.

"Section 2. The highway commission and the governing body of any such city or town may enter into an agreement for the construction, reconstruction, paving, improvements, repair and maintenance, of any road or street in such city or town, when such road or street furnishes a link in the state highway, or constitutes a

connection between two state highways, which said agreement shall fix the proportion which each party to said contract shall contribute towards such construction, reconstruction, paving, improvement, repair and/or maintenance and whether or not the same shall be done under the jurisdiction and control of the state highway commission or under the jurisdiction of the governing body of such city or town.''

The legislative assembly of 1931 further empowered the commission to make such changes in the location of the highways designated in chapter 423, Laws 1917, as in the judgment and discretion of the commission "will result in better alignment, more advantages and economical highway construction, or will contribute to and afford a better or more serviceable system of state highways than is possible under the present statutory locations; provided, however, that when the route of a state highway through any incorporated town or city has been established for a period of three or more years, said route or point of entrance shall not be changed without first calling a public hearing or hearings in the town or city affected by such change. Notice of such hearing shall be given by letter to the council or governing body of said town or city at least thirty days prior to the holding of such hearing.''

Chapter 193, Oregon Laws 1935, authorized the state of Oregon through the state highway commission to acquire all rights of way for state highways and secondary state highways located within the corporate limits of incorporated cities and towns, by purchase, donation, agreement, condemnation or otherwise, and to pay the cost and expense thereof from the state highway fund. This act confers upon the highway commission all the powers and authority vested in it, subject to the duties imposed upon the commission by § 44-

131, Oregon Code 1930, as finally amended in 1933 by chapter 20,.Oregon Laws, Second Special Session, 1933. Such powers and duties, however, are not contingent upon any neglect or refusal of any county to procure rights of way for highways.

Section 44-131,. *supra,* is an amendment of the section of the original 1917 highway law hereinbefore mentioned (chapter 237, § 9, Laws 1917) which required the county through which a state highway passed to pay the cost of obtaining rights of way for such highway. Section 6 of chapter 248, Oregon Laws 1931, as amended by chapter 428, Oregon Laws 1933, requiring the county to pay for the acquisition of rights of way for secondary highways, was repealed by chapter 193, Oregon Laws 1935.

The 1935 session of the legislature also enacted chapter 422, Oregon Laws 1935. The first section of that act not only authorizes and empowers the state highway commission to construct, reconstruct, pave and improve streets and roads through incorporated cities and towns having a population of less than 100,000, but directs that it repair and maintain streets and roads so appropriated "where such streets and roads form a link in the primary or secondary highway system of the state or constitute a connection between two such highways, and which streets and/or roads have been or hereafter may be designated by the highway commission as the street, streets or roads over which is, or shall hereafter be routed, state highway traffic". It was further provided that the highway commission should not have the power to establish or change any grade of any such street or road without the consent of the governing body of the city or town. The commission is further authorized to pay out of the state highway

funds the cost of any street or road work done under the provisions of the act. Under § 2 of the act the jurisdiction and control of the state highway commission as to streets or roads taken over by it within incorporated cities or towns are confined to that part of the appropriated street or road between established curbs, or, if there are no established curbs, then over that part of the street or road used for highway purposes; and the remainder of the street or road is within the control and jurisdiction of the city or town. Cities and towns, by the provisions of the act, retain the right to grant the privilege of opening the surface of any such street or road, and are responsible for the cost of repairing any opening so permitted. There is also conferred upon cities and towns the exclusive right to grant franchises over, beneath and upon any such streets or roads, and to control and regulate any franchises granted, with the proviso that the highway commission shall have the right "to utilize any storm sewers thereon or thereunder, without cost or charge therefor".

A review of the legislative history relating to the duties and authority of the state highway commission, beginning with the year 1917, is of importance in deciding the questions here presented. At almost every succeeding session of the legislature after the creation of the commission in 1917, the powers of that body have been enlarged. At first the fund available for state highway purposes was limited and the duty was imposed upon counties to acquire and pay for rights of way. Later, after more revenue became available, the highway commission was granted authority to pay for such rights of way out of its own fund. It was soon found that in order to have a complete highway system it was necessary for the commission to take charge of,

supervise, and bear part of the cost of the construction of state highways through towns of less than 2,000 population, and the power to do so was conferred by the 1921 act, *supra*. As the use of these highways increased and the necessity of a complete system became apparent, the jurisdiction of the highway commission was extended to cover secondary state highways.

In *Brand v. Multnomah County*, 38 Or. 79 (60 P. 390, 62 P. 209, 50 L. R. A. 389, 84 Am. St. Rep. 772), this court, in referring to the control of the state over streets and highways, observed:

"Primarily, the state has paramount control over all the highways within its borders, including public streets and highways within the confines of municipalities. Whatever authority a municipality may enjoy or possess, pertaining to its streets and highways, must be derived from the legislative assembly through its franchise or charter; and such a corporation acts, if at all, through a delegated power emanating from the initial source:" citing authorities. "Nor does the mere fact that the state has delegated certain powers to the municipality inhibit it from again resuming or exercising such powers."

In *Simon v. Northup*, 27 Or. 487 (40 P. 560, 30 L. R. A. 171), in refuting the contention that the legislature had no authority to transfer the management, supervision and control of certain bridges in Multnomah county from a bridge committee to that county, this court said:

"But if it were otherwise, the law is too well settled to be questioned that the public highways of a city are not the private property of the municipality, but are for the use of the general public, and that, as the legislature is the representative of the public at large, it has, in the absence of any constitutional restriction, paramount authority over such ways, and may grant the use or supervision and control thereof to some other

governmental agency, so long as they are not diverted to some use substantially different from that for which they were originally intended."

"The obligation", said this court, in *Yocom v. City of Sheridan,* 68 Or. 232 (137 P. 222), "to build and maintain adequate public highways, including bridges to be erected thereon over ravines or other obstructions to travel, devolves primarily upon the state, which sovereignty, unless prohibited by the fundamental law, may itself discharge the trust, or delegate the duty to a municipal or quasi-municipal corporation."

*Barrett v. Union Bridge Company,* 117 Or. 220 (243 P. 93, 45 A. L. R. 521), involved the question of the right of the state highway commission to construct a bridge over the stream which formed a boundary line between two counties. It was contended that inasmuch as the law authorized and provided a mode whereby the two counties, acting jointly, or one of them if the other refused to join, might construct the bridge, the general provisions of the law creating the state highway commission vested no authority in that body to build the bridge. In answering that argument this court said: ·

"This is equivalent to saying, that although the state highway commission is vested with the power to designate and construct state highways, without regard to county lines, it must stop such construction at every stream which forms a boundary between two counties, unless such counties, or one of them, consent to build a bridge over such stream. There is no provision of law by which the county courts of such counties could be coerced or compelled to consent to build such bridge, and if the construction contended for is correct, the state highway commission would be stripped of one of its most essential powers. We think that a careful study of the act creating and defining the powers of the state highway commission would

disclose that no such lack of power on the part of the state highway commission exists, in cases where the bridge is on a state highway which has been designated as such by the state legislature, or by the commission itself, pursuant to legislative authority."

See also, with reference to the extent of authority vested in the state highway commission: *Moody v. Benson*, 109 Or. 414 (220 P. 561).

■ The right to designate, construct and maintain state highways resides primarily in the legislature: *State v. District Court*, 80 Mont. 228 (260 P. 134). The Oregon legislature has delegated this right to the state highway commission, by the various statutes hereinbefore mentioned.

■ Some question has arisen as to whether or not the original acts passed in 1917, chapters 237 and 423, Laws 1917, granted to the highway commission authority to designate, construct and maintain state highways through incorporated cities and towns. Any doubt that could have existed concerning limitations imposed upon the state highway commission as to its authority in cities and towns has been removed by subsequent legislation. Chapter 88, Oregon Laws 1931, conferred upon the highway commission power to construct, reconstruct, pave, improve, repair and maintain roads and streets through incorporated cities and towns where such roads or streets formed a link in the state highway or constituted a connection between two state highways.

In defining the term "construction", the court of appeals of New York in the case of *In re Board of Public Works*, 144 N. Y. 440 (39 N. E. 387), observed:

"'Construction' is a broad term, authorizing the making of new streets; 'improve' permits new work

upon streets already constructed; and 'repair' relates to the restoration of an existing condition. The four terms [including cleaning of streets] cover the whole subject, from the making of the new street to its final and ordinary maintenance.''

In *Carlson v. Kitsap County*, 124 Wash. 155 (213 P. 930), the court commented upon a provision of the statute which stated that the county commissioners ''shall have power as hereafter provided to cause to be constructed or improved any county road, or part of such road, within the limits of their respective counties,'' as follows:

''The use of the word 'construction' in the disjunctive would seem to indicate that the legislature intended thereby to authorize the building of something new, otherwise the word is meaningless and adds nothing to what follows. Since it is our duty to give effect to each word used, if that be reasonable, treating none as meaningless, and since in its common use 'construction' means the creation of something new, rather than the repair or improvement of something already existing, we can not hold that the act in question withholds the power to locate and construct new roads.''

It is apparent that the Oregon legislature in enacting chapter 88, *supra*, intended to and did confer upon the state highway commission the right to construct theretofore unestablished highways through incorporated cities and towns. It had previously conferred upon the highway commission authority to designate and establish a complete state highway system within and without the corporate limits of cities and towns, and by chapter 88, *supra*, it also conferred upon the state highway commission power to reconstruct, improve and maintain streets and roads within incorporated cities and towns, where such streets and roads

form a link in the state highway system, or constitute a connection between two state highways.

■ The power to establish and construct, through incorporated cities and towns, highways not theretofore located, and to reconstruct, pave, improve, and repair existing roads, is not contingent, under the provisions of chapter 88, *supra*, upon the consent of the governing body of any city or town, except when a change of grade in any such street or road is involved. The second paragraph of this act provides for cooperation between the commission and cities in performing the acts which the first section of the statute authorizes the commission to do. It in no way limits the authority which is by the first section granted to the commission.

It is not necessary to determine whether or not the terms of chapter 88 are sufficient to confer upon the highway commission power to acquire rights of way by purchase, condemnation or otherwise, for the reason that such power is expressly granted to the commission by chapter 193, Oregon Laws 1935.

■ The only remaining question is whether the rights and powers conferred by chapter 88, *supra,* have, in cities of 100,000 population, by implication been repealed by chapter 422, Oregon Laws 1935. There is nothing contained in the latter act which expressly repeals the 1931 enactment.

Section 1 of chapter 422, *supra,* does not restrict the authority of the commission in cities or towns of less than 100,000 population, unless it can be said that the mandatory provision of that section directing the commission to repair and maintain certain streets and roads through such cities and towns could be termed a restriction. Chapter 88, *supra,* does not attempt to de-

fine in express language the jurisdiction and control of the commission and of cities, respectively, in the case of streets taken over by the state highway commission, whereas the 1935 enactment last mentioned does define specifically the respective rights of commission and cities as to jurisdiction and control.

There are certain cardinal principles to be observed in the construction of statutes. Repeals by implication are not favored. There must be a positive repugnance between the provisions of the new law and those of the old, and even then the old law is repealed by implication only to the extent of the repugnance. All acts *in pari materia* are to be taken together as though constituting one law. Intention to repeal will not be presumed, nor the effect of repeal conceded, unless the inconsistency is admitted, and then only to the extent of the repugnance: *McLaughlin v. Hoover*, 1 Or. 31; 1 Sutherland on Statutory Construction (2d Ed.), § 247, page 461. The law relating to repeals by implication is clearly stated in *Winters v. George*, 21 Or. 251 (27 P. 1041), as follows:

"It is elementary law that repeals by implication are not favored. It is a reasonable presumption that the legislature did not intend to keep really contradictory enactments in the statute book, or to effect so important a measure as the repeal of a law without expressing an intention to do so. Such an interpretation, therefore, is not to be adopted unless it is inevitable. Any reasonable construction which offers an escape from it is more likely to be in consonance with the real intention. Hence it is said to be a rule founded in reason as well as in abundant authority, that in order to give an act not covering the entire ground of an earlier one nor clearly intended as a substitute for it the effect of repealing it, the implication of an intention to repeal must necessarily flow from the language

used, disclosing a repugnancy between its provisions and the earlier law, so positive as to be irreconcilable by any fair, strict or liberal construction which would, without destroying its evident intent and meaning, find for it a reasonable field of operation, preserving at the same time the force of the earlier law, and construing both together in harmony with the whole course of legislation on the subject. These principles are laid down by a recent author. (Endlich Interp. Stat. § 210; Cooley Const. Lim. *153.)''

See also *Winslow v. Morton,* 118 N. C. 486 (24 S. E. 417).

When we apply these principles to the two acts in question and construe them *in pari materia* there is not such a repugnance between them that the latter act must by implication repeal the former. There is no indication that the legislature in enacting the 1935 statute intended to repeal the 1931 enactment. So far as chapter 88, Oregon Laws 1931, refers to cities of 100,000 population or over, it is in no wise affected by chapter 422, Oregon Laws 1935.

We conclude that the state highway commission of Oregon has power and authority to do and perform within the corporate limits of the city of Portland each and all the acts and things set out and defined by the circuit court in its declaratory judgment and hereinbefore enumerated.

█ The city of Portland, although not appealing from the judgment, has discussed in its brief matters which do not appear to have been presented by the pleadings, covered by the judgment or discussed in the briefs of the appellant or respondent state highway commission. For that reason we express no opinion regarding such matters.

The judgment appealed from is affirmed. None of the parties will recover costs in this court.

Rossman, J., not sitting.