Argued and submitted September 10, 1980; reargued April 7, sentence modified June 23, 1981

# STATE OF OREGON,
*Respondent,*

*v.*

# DOUGLAS LINN SHUMWAY,
*Petitioner.*

## (No. 79-2-17, CA 14464, SC 26922)

630 P2d 796

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for petitioner. With him on the briefs was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Stephen Kanter, Cooperating Attorney, Oregon American Civil Liberties Union, Portland, filed a brief amicus curiae.

DENECKE, C. J.

Tongue, J., filed an opinion concurring in part; dissenting in part, joined by Peterson, J.

Lent, J., filed a concurring opinion.

Tanzer, J., filed a specially concurring opinion, joined by Linde, J.

## DENECKE, C. J.

The defendant was convicted of intentional murder and sentenced to life imprisonment. He appealed to the Court of Appeals, contending both that error occurred during his trial and the statute pursuant to which he was sentenced was invalid. The Court of Appeals affirmed. 44 Or App 657, 607 P2d 191 (1980). We granted review.

The defendant contends the instruction on self-defense was erroneous.

■     The trial court instructed the jury on the affirmative defense of self-defense and the defendant excepted to a portion which implied that the defendant was under a duty to escape and avoid the affray. The Court of Appeals concluded that it was compelled to affirm the conviction due to certain cases decided by this court prior to the enactment of ORS 161.205(4), 161.209 and 161.219, which specify when deadly force may be used in defense of persons. The instruction does not appear to conform to those statutes. We conclude that the error, if any, was harmless because the issue of self-defense was not presented by the evidence.

The defendant and the victim shared an apartment. The defendant killed the victim with the second of two pistol shots. The state's evidence was that the defendant first shot the victim as the victim, unarmed, was approaching the defendant in a threatening manner. Two state's witnesses testified that the defendant then walked to the victim's body as it lay on the floor and fired a second bullet into the victim's head. The defendant confessed that he fired the second round as the victim was going down from the first. The defendant testified in his defense that he fired the first shot in fear but that the second shot was accidental. He testified that the victim was knocked back on the couch by the first shot, but that he rose and walked to the hall where he fell to the floor. Defendant approached the still body and stood over it with his gun hanging down. Just then the victim's arm swung around, catching defendant's leg, and defendant fired the second shot accidentally. He testified on cross-examination that he did not know if he shot intentionally or not and that he did not know if he intended to kill the victim or not.

The affirmative defense of self-defense was clearly raised regarding the first shot, but not the second shot, which was the homicidal act. According to the State's evidence, the second shot was fired deliberately after any necessity for self-defense had ceased. According to the defendant's evidence, the second shot was not self-defense. Rather, the defense was accident; i.e., lack of assaultive intent. In these circumstances, the self-defense instruction was superfluous and was more to the benefit of the defendant than to his prejudice.

The defendant's assignments of error regarding questioning prospective jurors are no longer relevant because they concerned the possibility of the imposition of a death sentence.

The defendant was convicted pursuant to ORS 163.115. This statute was amended by an initiative in 1978. The chief effect of the amendments was to provide that the death sentence could be imposed if the trial court found that certain facts existed and if the death sentence was not imposed and the sentence imposed was life imprisonment the defendant would be required to serve not less than 25 years before becoming eligible for parole.

Subsequent to the initial oral argument in this case, we decided in *State v. Quinn,* 290 Or 383, 407, 623 P2d 630 (1981), that the provisions of the initiative regarding the death penalty were invalid as being in violation of Art I, § 11 of the Oregon Constitution which provides for the right of trial by jury of all facts constituting the crime.

Because of *State v. Quinn, supra,* the issue now arises whether the portion of the initiative providing that in the event the judge imposes a life sentence, 25 years of this sentence must be served before the defendant is eligible for parole, is severable from the portion concerning imposition of the death penalty or is the entire initiative invalid?

We asked for further briefs on this issue and for reargument.

We have announced the following principles in deciding the question of severability:

" 'If * * * the constitutional and the unconstitutional portions are so dependent on each other as to warrant the belief that the legislature intended them to take effect in their entirety, it follows that if the whole cannot be carried into effect, it will be presumed that the legislature would not have passed the residue independently, and accordingly, the entire statute is invalid.' 11 Am. Jur., Consitutional Law, 842, § 155.

" 'If the valid and invalid parts are so bound together that the invalid part is a material inducement to the valid portion, the whole is invalid.' Id., 849, § 157." *Fullerton v. Lamm,* 177 Or 655, 697, 163 P2d 941, 165 P2d 63 (1946).

In voting favorably on the initiative, the electorate were voting for greater penalties for murder than were presently in the statutes. If the death penalty were not imposed, the voters favored requiring that when the required life sentence was imposed the defendant serve a long period of time before being eligible for parole. There is no suggestion that if the death penalty were found invalid the voters would not have favored retaining the requirement that the defendant sentenced to life must serve at least 25 years.

■ We hold the statute requiring the 25 year service before parole is severable from the portion concerning the death penalty.

The defendant contends that the amended ORS 163.115, the statute amended by the initiative, is contrary to the equal protection and due process clauses of the Fourteenth Amendment and that portion of Art I, § 16 of the Oregon Constitution which provides that "* * * all penalties shall be proportioned to the offense." Defendant contends it is contrary to these provisions because "one convicted of a more serious offense (aggravated murder) is now exposed to a lesser sentence than one convicted of 'regular' murder."

In 1971 the legislature adopted a new criminal code. What is now a part of ORS 163.115 was part of that code. ORS 163.115 provides:

"(1)  Except as provided in ORS 163.118 and 163.125, criminal homicide constitutes murder when:

"(a)  It is committed intentionally by a person who is not under the influence of an extreme emotional disturbance;

"(b)   It is committed by a person, acting either alone or with one or more persons, who commits or attempts to commit arson in the first degree, burglary in the first degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree or sodomy in the first degree and in the course of and in furtherance of the crime he is committing or attempting to commit, or the immediate flight therefrom, he, or another participant if there be any, causes the death of a person other than one of the participants; or

"* * * * *."

It also provides: "(5) * * * a person convicted of murder shall be punished by imprisonment for life * * *."

In 1977 the legislature created the crime of "aggravated murder." ORS 163.095 provides:

"As used in ORS 163.105 and this section, 'aggravated murder' means murder as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances:

"(1)(a)   The defendant committed the murder pursuant to an agreement that he receive money or other thing of value for commiting the murder.

"(b)   The defendant solicited another to commit the murder and paid or agreed to pay the person money or other thing of value for committing the murder.

"(c)   The defendant committed murder after having been convicted of murder as defined in ORS 163.115.

"(d)   The defendant committed murder by means of bombing.

"(2)(a)   The victim was one of the following and the murder was related to the performance of the victim's official duties in the justice system:

"(A)   A police officer as defined in subsection (5) of ORS 181.610;

"(B)   A correctional, parole or probation officer or other person charged with the duty of custody, control or supervision of convicted persons;

"(C)   A member of the Oregon State Police;

"(D)   A judicial officer as defined in ORS 1.210;

"(E)   A juror or witness in a criminal proceeding;

"(F)   An employe or officer of a court of justice; or

"(G)   A member of the State Board of Parole.

"(b)   The defendant was confined in a state, county or municipal penal or correctional facility or was other- wise in custody when the murder occurred.

"(c)   There was more than one murder victim.

"(d)   The defendant personally committed the homicide in the course or in the furtherance of the crime of robbery in any degree, kidnapping or arson in the first degree, any sexual offense specified in this chapter, or in immediate flight therefrom.

"(e)   The defendant committed murder after having been convicted of manslaughter as defined in ORS 163.118."

ORS 163.105 provides:

"(1)   When a defendant is convicted of murder defined as aggravated murder pursuant to subsection (1) of ORS 163.095, the court shall order that the defendant shall be confined for a minimum of 30 years without possibility of parole, release on work release, temporary leave or employ- ment at a forest or work camp.

"(2)   When a defendant is convicted of murder defined as aggravated murder pursuant to subsection (2) of ORS 163.095, the court shall order that the defendant shall be confined for a minimum of 20 years without possibility of parole, release on work release, temporary leave or employ- ment at a forest or work camp.

"(3)   At any time after 20 years from the date of imposi- tion of a minimum period of confinement pursuant to subsec- tion (1) of this section, or at any time after 15 years from the date of imposition of a minimum period of confinement pursuant to subsection (2) of this section, the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabili- tated within a reason- able period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time. The proceeding shall be conducted in the manner prescribed for a contested case hearing under ORS 183.310 to 183.500 except that:

"* * * * *."

As stated, in 1978, by initiative, the people amended ORS 163.115. Part of the initiative enlarged the definition of "murder" to include:

"(c)   It is committed by a person, acting either alone or with one or more persons, who places or discharges a

destructive device or bomb or who commits or attempts to commit aircraft piracy."

The initiative also amended § 5 of ORS 163.115 so it now provides:

"(5)   Except when a sentence of death is imposed pursuant to ORS 163.116, a person convicted of murder shall be punished by imprisonment for life and shall be required to serve not less than 25 years before becoming eligible for parole."

As stated, the initiative also provided for the death penalty in certain circumstances. ORS 163.116.

In summary, the aggravated murder statute provides that the convicted person must serve a minimum confinement of either 20 years or 15 years, depending upon the aggravating circumstances, without possibility of parole or release. The murder statute, as amended by the initiative, provides for a sentence of death or life imprisonment and the defendant must serve a minimum of 25 years before being eligible for parole.

The Court of Appeals did not decide the merits of defendant's disproportionate penalties contention because it was persuaded by the state's argument that the initiative impliedly repealed the penalty provisions of the aggravated murder statute and, therefore, there was no other penalty to compare with the initiative enacted penalty.

The doctrine of implied repeal of statutes is that when the legislature enacts a subsequent statute which is repugnant to or in conflict with a prior statute, but contains no language expressly repealing the prior statute, the prior statute is impliedly repealed. 1A Sands, Sutherland, Statutory Construction § 23.09 (4th ed 1972). Whether there is an implied repeal depends upon whether the two statutes are conflicting; that is, whether both can be applied or whether a choice has to be made because they are inconsistent. *Gen. Elec. Credit Corp. v. Tax Com.,* 231 Or 570, 592-593, 373 P2d 974 (1962); *Anthony v. Veatch,* 189 Or 462, 481, 220 P2d 493, 221 P2d 575, cert den 340 US 923, 71 S Ct 499, 95 L Ed 667 (1950).

We conclude that the statutes are not repugnant and, therefore, the initiative did not repeal the aggravated murder statute.

The defendant was charged with intentionally causing the death of the victim by shooting him. Clearly a violation of ORS 163.115, the statute amended by initiative, was charged. None of the means, motives, victims or other circumstances specified in the aggravated murder statute were charged. Defendant could not have been convicted under the aggravated murder statute; therefore, the minimum penalties provided in the aggravated murder statute could not be applicable to defendant. For this reason the portions of the two statutes with which we are here concerned are not conflicting.

Only if certain felony murders or murders by bombing are charged do the statutes conflict. Section 2(d) of the aggravated murder statute provides:

"As used in ORS 163.105 and this section, 'aggravated murder' means murder * * * which is committed under * * * any of the following circumstances:
"* * * * *.
"(1)(d)  The defendant committed murder by means of bombing.
"* * * * *.
"(2)(d)  The defendant personally committed the homicide in the course or in the furtherance of the crime of robbery in any degree, kidnapping or arson in the first degree, any sexual offense specified in this chapter, or in immediate flight therefrom."

Section 1(b) of the initiative provides:

"(1)  Except as provided in ORS 163.118 and 163.125, criminal homicide constitutes murder when:
"* * * * *.
"(b)  It is committed by a person, acting either alone or with one or more persons, who commits or attempts to commit arson in the first degree, burglary in the first degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree or sodomy in the first degree and in the course of and in furtherance of the crime he is committing or attempting to commit, or the immediate flight therefrom, he, or another participant if there be any, causes the death of a person other than one of the participants; or
"(c)  It is committed by a person, acting either alone or with one or more persons, who places or discharges a

destructive device or bomb or who commits or attempts to commit aircraft piracy.

"* * * * *."

Under these felony murder or murder by bombing provisions, a defendant could be convicted of, for example, robbery in the first degree, and subject to a possible minimum of 15 years of imprisonment without release or parole under the aggravated murder statute and a minimum of 25 years without release or parole under the initiative. However, we do not have to decide if these conflicts would cause us to hold the aggravated murder statute was impliedly repealed. We have repeatedly stated: "Intention to repeal will not be presumed, nor the effect of repeal conceded, unless the inconsistency is admitted, *and then only to the extent of the repugnance.*" (Emphasis added.) *Cabell v. City of Portland,* 153 Or 528, 543, 57 P2d 1292 (1936). Justice Lusk stated the proposition:

"'* * * Repeals by implication are not favored, and before such repeal is established there must be between two acts 'plain, unavoidable, and irreconcilable repugnancy, and *even then the old law is repealed by implication only pro tanto, to the extent of the repugnancy.*' *Mesick v. Duby,* 86 Or. 366, 371, 168 P. 628 (citing 36 Cyc. 1073); * * *." (Emphasis added.) *Noble v. Noble,* 164 Or 538, 549, 103 P2d 293 (1940).

Aside from these statements, there is no reason to impliedly repeal a consistent provision in a prior statute merely because another provision is inconsistent, unless the legislative intent is found to be to have the prior statute treated only as an entity.

That one of the statutes with which we are concerned was enacted by a vote of the people rather than the legislature does not affect our consideration. We must determine whether the provisions are conflicting and, if so, apply the doctrine of implied repeal. "It is said that in the construction of statutes there is no essential difference between those enacted by the initiative and referendum and those enacted in the usual way." *Anthony v. Veatch, supra,* 189 Or at 496-497.

The dissent and apparently the Court of Appeals would enlarge the doctrine of implied repeal. The essence of

those opinions is to assert that if a subsequent statute provides a penalty for an offense that is disproportionate to the penalty in a prior statute for another offense, the intention of the legislature in passing the subsequent statute was to repeal the pre-existing statute. We assume that this approach is based upon the assumption that disproportionate is synonymous with repugnant.

Such an extention of the doctrine of implied repeal could produce some peculiar results. *Cannon v. Gladden*, 203 Or 629, 281 P2d 233 (1955), is illustrative. In that case the facts were that in 1864 the penalty for rape was fixed at a maximum of 20 years in prison. In 1919 the maximum penalty for assault with intent to commit rape was fixed at life in prison. We held such penalties were disproportionate. By the reasoning of the dissent and the Court of Appeals, because the penalties were disproportionate, the prior existing rape statute with its 20-year maximum sentence would be impliedly repealed.

Following to its logical conclusion the reasoning of the dissent and the Court of Appeals, there is no necessity for Art I, § 16 of the Oregon Constitution. Under the reasoning of the dissent and the Court of Appeals, if a subsequent statute provides for a sentence disproportionate to the sentence provided for another crime, the subsequent statute impliedly repeals the prior statute.

We conclude that those provisions in the two statutes which are applicable to this case are not inconsistent and, therefore, the passage of the initiative did not impliedly repeal the aggravated murder statute.

Having found there was no implied repeal, we must determine whether the statutory scheme is consistent with that part of Art I, § 16 of the Oregon Constitution which requires that "all penalties shall be proportioned to the offense."

The leading case interpreting Art I, § 16 is *Cannon v. Gladden, supra* 203 Or 629. The petitioner in that case was charged with statutory rape, convicted of assault with intent to commit rape, and sentenced to life imprisonment. The maximum penalty for either forcible or statutory rape was 20 years; however, the penalty for assault with intent

to commit rape was "imprisonment in the penitentiary during the life of such person or for a period of not less than one nor more than twenty years." Or Laws 1919, ch 42, p 54. We held the life sentence was disproportionate to the offense and held it void.

*Cannon v. Gladden, supra,* was applied in dicta in *Merrill v. Gladden,* 216 Or 460, 464, 337 P2d 774 (1959). We stated:

> "* * * Therefore, we are of the opinion the crime of assault with an intent to commit robbery must be a lesser included offense of the crime of robbery, and, since our constitution provides that 'all penalties must be proportioned to the offense,' we conclude that the penalty assessable for the crime of assault with intent to rob cannot be greater than that provided for the accomplished robbery."

In the present case the defendant was convicted of intentional homicide and sentenced to life and required, as ORS 163.115 amended by the initiative provides, to serve 25 years before becoming eligible for parole. Whereas, if he had been convicted of intentional homicide, committed under any of the aggravating circumstances provided in ORS 163.095, he would be eligible for parole either 20 or 15 years after sentencing, depending upon the aggravating circumstances.

■ Under this statutory scheme, a defendant receives a lesser minimum sentence to be served before being eligible for parole for aggravated intentional homicide than he does for an unaggravated intentional homicide. This is in violation of Art I, § 16 of the Oregon Constitution and that provision in ORS 163.115(5) requiring the defendant to serve not less than 25 years before becoming eligible for parole is invalid and cannot be applied to the defendant; the statutory provision requiring a life sentence is valid.

The conviction and sentence to the Corrections Division for the rest of defendant's natural life is affirmed.

**TONGUE, J.,** concurring in part, dissenting in part.

I concur in those parts of the opinion by Chief Justice Denecke concerning the instruction on self-defense,

the questioning of prospective jurors, and the issue of severability.

I respectfully dissent, however, from the holding of that opinion that:

(1)   Section 5 of the ballot measure adopted by the voters of Oregon in 1978 (ORS 163.115(5), which imposed a mandatory minimum sentence of 25 years for all murders) *is not so inconsistent* with provisions of the "aggravated murder" statute adopted by the legislature in 1977 (ORS 163.105, which imposed mandatory minimum sentences of 15 and 20 years for certain described types of "aggravated murder"), so as to result in an implied repeal of that 1977 statute because the murder committed by this defendant was not an "aggravated murder" under that statute and he could not have been convicted under that statute (291 Or at 161), and, at the same time, that:

(2)   The mandatory minimum sentence of 25 years imposed on this defendant under Section 5 of the ballot measure (ORS 163.115(5)) was invalid because such a sentence *is so inconsistent* with mandatory minimum sentences of 15 or 20 years for more "aggravated murders" under ORS 163.105 as to violate Article I, Section 16 of the Oregon Constitution, which requires that "all penalties shall be proportioned to the offense." (291 Or at 163).

In my opinion, because defendant's mandatory minimum sentence of 25 years under ORS 163.115(5) was so inconsistent with mandatory minimum sentences of 15 or 20 years for more aggravated murders under ORS 163.105 as to require a holding that Article I, Section 16 was violated, it also follows that ORS 163.115(5) and ORS 163.105 are so inconsistent as to also require a holding that the aggravated murder statute of 1977 (ORS 163.105, which provided mandatory sentences of 15 or 20 years for some "aggravated murders") was repealed by implication when the voters of Oregon in 1978 adopted a statute which provides a mandatory minimum sentence of 25 years for *all* murders.

I am in agreement with the decision by the Court of Appeals in which that court, in an opinion by Schwab, C.J., held that ORS 163.105 was repealed by implication by ORS

163.115(5) and in so holding agreed with the Attorney General that:

"* * * the obvious intent of the sponsors was to create a unified punishment scheme for *all* murders: The intent was that persons convicted of *any* murder be punished by death or by life imprisonment subject to the 25-year minimum incarceration requirement."

and went on to hold that:

"It is apparent that the penalty provided by ORS 163.115(5), as amended, is in conflict with the penalties under ORS 163.105, and that the two statutes cannot be reconciled. Even leaving aside the fact that the kinds of conduct punishable under ORS 163.105 are more 'serious' than some kinds of conduct to which ORS 163.115(5) relates, it is self-evident that the requirement of a minimum of 25 years' confinement for *all* murders under ORS 163.115(5) as amended is not compatible with the sentencing scheme under ORS 163.105, which made parole effectively possible after 15 or 20 years for *some* murders."

For these reasons, I would hold, as did the Court of Appeals, that ORS 163.105 was repealed by implication by the adoption by the voters of Oregon in 1978 of what is now ORS 163.115(5).

I would also hold that a statute such as this, which provides for a mandatory minimum sentence for the offense of murder, does not violate the constitutional requirement under Article I, Section 16 that "all penalties shall be proportioned to the offense." The sole basis for the holding by the majority that ORS 163.115(5) is invalid as contrary to Article I, Section 16, (and the sole contention by the defendant) is that its provisions for a mandatory minimum sentence of 25 years are in conflict with the less stringent provisions of the aggravated murder statute, ORS 163.105. Because, however, that statute was repealed by the adoption of ORS 163.115(5), it follows that there is no such conflict. In the absence of such a conflict, the sole basis for that holding does not exist.

For these reasons I dissent from the opinion by Chief Justice Denecke that ORS 163.115(5) is invalid as in conflict with Article I, Section 16 of the Oregon Constitution.

Peterson, J., joins in this opinion.

**LENT, J.,** concurring in part and otherwise concurring in the result.

I concur in those parts of the opinion authored by Chief Justice Denecke concerning the instruction on self-defense, the questioning of prospective jurors, and the issue of severability.

I cannot concur in the opinion of the Chief Justice concerning the constitutionality of ORS 163.115 under Or Const Art I, § 16, or the separate opinion concerning the constitutionality of the statute under Or Const Art I, § 15, because I am convinced neither question is now properly before the court.

Prior to the enactment of the "aggravated murder" statutes, Or Laws 1977, ch 370, and continuing until the effective date of Ballot Measure 8, Or Laws 1979, ch 2, the punishment for murder was specified in ORS 163.115(5) as follows:

"A person convicted of murder shall be punished by imprisonment for life."

By Or Laws 1977, ch 370, § 1, the legislature prescribed the crime of "aggravated murder" and defined that term. By Or Laws 1977, ch 370, § 2, the legislature provided for sentencing one convicted of aggravated murder and for consideration of that person for parole. Those two sections of ch 370 were codified as ORS 163.095 and 163.105, respectively. ORS 163.105 imposes upon the sentencing court the obligation to fix a statutorily prescribed minimum sentence:

"(1)   When a defendant is convicted of murder defined as aggravated murder pursuant to subsection (1) of ORS 163.095, *the court shall order* that the defendant shall be confined for a minimum of 30 years without possibility of parole, release on work release, temporary leave or employment at a forest or work camp.

"(2)   When a defendant is convicted of murder defined as aggravated murder pursuant to subsection (2) of ORS 163.095, *the court shall order* that the defendant shall be confined for a minimum of 20 years without possibility of parole, release on work release, temporary leave or employment at a forest or work camp." (Emphasis added.)

The statute requires the court to order confinement for a minimum term without possibility of parole or other

early relaxation of custody. When the court has carried out the sentencing duty thus imposed, the court has nothing further to do under those code sections. ORS 163.105(3), (4) and (5) speak to release earlier than the specified minimum terms, but those subsections are concerned with duties and powers of the State Board of Parole.

The statutory scheme for punishing one found guilty of non-aggravated murder under ORS 163.115 is significantly different. By passage of Ballot Measure 8 the people amended ORS 163.115(5) to its present form:

> "Except when a sentence of death is imposed pursuant to ORS 163.116, a person convicted of murder shall be punished by imprisonment for life and shall be required to serve not less than 25 years before becoming eligible for parole."

The difference between this subsection and ORS 163.015(1) and (2) is striking. ORS 163.115 is absolutely silent as to any duty of the sentencing court to impose any minimum sentence. Rather, the subsection deals with minimum time to be served by prescribing eligibility for parole, a matter for the cognizance of the State Board of Parole.

The pertinent part of the trial court's judgment was as follows:

> "WHEREFORE, IT IS HEREBY ORDERED that the defendant, Douglas Linn Shumway, be sentenced to the legal and physical custody and control of the Corrections Division of the State of Oregon for the rest of his natural life."

That judgment does not set any minimum sentence, nor does it contain any mention of any aspect of the defendant's eligibility for parole.

It is from that judgment that defendant has appealed. He made various assignments of error with respect to the trial court's instructions to the jury and questioning of the members of the jury panel; we have decided those matters adversely to the defendant. His remaining assignment of error does not attack the sentence which was imposed.

As the case now stands, therefore, he has been duly convicted, and a sentence has been pronounced, which he

does not question. The judgment and sentence which have been given are exactly that which would have been the result of defendant's conviction of the crime of murder had Ballot Measure 8 died aborning.

Article I, sections 15 and 16, of the Oregon Constitution may have some application to issues that some day may arise with respect to this defendant's eligibility for parole should there come a time when no reasonable person could question the defendant's reformation in fact or should there come a time when he might be eligible for parole had he committed aggravated murder but is not eligible because he committed a non-aggravated murder.[1]

In summary, it is my position that the discussions by the Chief Justice and in the other separate opinion of the constitutional questions are dicta. There is nothing in the record of this case to the present time to occasion any decision by any court as to the constitutionality of the statute in fixing a minimum period of confinement before the defendant is eligible for parole. There is no error of the trial court to be found and corrected. Defendant had the fair trial to which he was entitled and has been sentenced to life imprisonment.

I concur in the result that the conviction and sentence to imprisonment for defendant's natural life must be affirmed.

**TANZER, J.**, specially concurring.

As was true of the death penalty provision of the same initiative measure, the penalty provision now before us shows the hazards of fitting one penal law into the state's existing system of constitutional provisions and statutes without the careful scrutiny, amendments and adjustments possible in the representative legislative process and not possible in the initiative legislative process.

Oregon prizes its tradition of a responsive and responsible system of public policy. From the beginning of

---

[1] There may be any number of issues which may arise in the future that I have not discussed. I do not pretend to be able to foresee all possible settings in which he may timely assert his constitutional arguments.

statehood, our constitution has expressed Oregon's commitment to a fair and humane penal system, including guarantees against inhumane conditions of imprisonment, Art I, § 13, detention without bail, Art I, § 14, vindictive punishment, Art I, § 15, and disproportionate or cruel and unusual punishment, Art I, § 16. All these provisions were enacted by the vote of the people of Oregon. The criminal code has been developed and revised over many years in consciousness of these century-old principles.

Oregon also prizes its tradition of popular legislation by initiative petition and direct popular vote. It is inevitable that measures so proposed and enacted, without the opportunity for amendments and adjustments, sometimes risk fatal conflicts with the preexisting scheme of statutory and constitutional law.

This happened in the case of Measure 8 in 1980. Because the death penalty provision was drafted and submitted without regard to previous changes in the homicide statutes, it left an essential fact to determination by a judge rather than a jury, contrary to Oregon Constitution, Article I, Section 11. *State v. Quinn,* 290 Or 383, 623 P2d 630 (1981). The noncapital sentence provisions were also submitted to the people subject to a similar legislative defect, inconsistent with existing sentence provisions that distinguish between murder and aggravated murder. That inconsistency created the problem of disproportionality analyzed in the majority opinion.

I agree with the majority that the enactment of ORS 163.115(5) by Measure 8 did not impliedly repeal the penalty for aggravated murder (other than felony murder and murder by bombing) provided in ORS 163.095 and 163.105. In 1977, the legislature considered and rejected House Bill 2321, which was similar to Measure 8 in all respects. Because the initiative process, by its nature, did not provide intensive legislative scrutiny and modification, Measure 8 was submitted to the people despite an apparent abundance of constitutional defects. The majority holds that its penalty provisions, now in ORS 163.115(5), and those for aggravated murder, ORS 163.105, are not repugnant. I agree with that analysis and with the conclusion that there has been no implied repeal but, as I analyze

ORS 163.115(5), it is invalid without regard to its relationship to other penalties.

In my opinion, the minimum penalty for murder, standing alone, is invalid because it offends Article I, Section 15, of the Oregon Constitution. I conclude that a severe, inflexible minimum penalty for every murder, regardless of circumstances, is unconstitutional regardless of whether another statute is repugnant to it. Therefore, I would first consider defendant's challenge to the validity of ORS 163.115(5) under Article I, Section 15, of the Oregon Constitution which provides that:

"Laws for the punishment of crime shall be founded on the principles of reformation, and not of vindictive justice."

The recorded history of the constitutional convention tells us only that the framers of our constitution consciously included Article I, Section 15, by adapting a similar provision of the constitution of Indiana.[1] Despite a silent history, however, we must assume from the fact of their intentional adoption of Article I, Section 15, that the framers intended that the section have meaning and effect. The scant interpretive caselaw only describes results and effects that the provision does not compel. But it cannot mean nothing; it must mean something. Defendant's challenge in this case requires that we discern the meaning of the section insofar as it affects ORS 163.115(5).

Certain conclusions, some of which are reflected in our opinions, may be deduced from the plain words of the section. First, the section is in two parts, one positive, one negative. The former is a command that penal laws be founded on principles of reformation; the second is an injunction against vindictive justice as a basis for penal laws. We gave separate definitions to the two parts in *Tuel v. Gladden*, 234 Or 1, 5, 379 P2d 553 (1963):

"Reformation means doing over to bring about a better result, correction, or rectification. Vindictive, on the other hand, is defined by words such as 'revenge,' 'retaliate,' or

---

[1] Indiana Constitution, Art I, sec 18:

"The penal code shall be founded on the principles of reformation, and not of vindictive justice."

'punishment.' The best known law applying vindictive justice is *lex talionis:* 'An eye for an eye, and a tooth for a tooth.' *Matthew* 5:38."

Obviously, the function of the court differs as to each part. Generally, judicial enforcement of a constitutional exhortation is functionally more complicated than enforcement of a constitutional bar.

Second, the section assumes *a priori* that some criminals can be reformed. In this particular, the section has been said to reflect the utilitarian philosophy which prevailed in the mid-Nineteenth Century by which public action was to be directed to the achievement of socially useful objectives. Penology was to be directed to reforming offenders into useful citizens. *See, Sterling v. Cupp,* 290 Or 611, 625 P2d 123 (1981). *See also* Kanter, *Capital Punishment,* 16 Will L J 1, 38 (1979). Early in this century, utilitarianism was echoed in *State v. Walton,* 50 Or 142, 149-50, 91 P 490 (1907), in which this court observed that the reformative policy of Article I, Section 15, serves the public as well as the offender in that society will benefit from the offender's service during "a longer period of his life as a reformed member of society." Although current attitudes are no longer as sanguine about the official ability to cure persons afflicted with criminal minds, *see Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 106 n 13, 570 P2d 52 (1977), Article I, Section 15, continues with full force to commit the State of Oregon as a matter of constitutional mandate to the idea that some criminals are capable of reformative change and that our penal laws must reflect that idea.

Third, the section refers to penal laws rather than to individual sentences. We early held that when a particular penal statute is reviewed for conformity to Article I, Section 15, it must be scrutinized as a part of its statutory scheme rather than standing alone. *State v. Finch,* 54 Or 482, 498-99, 103 P 505 (1909). Oregon's "laws for the punishment of crime" have undergone extensive changes in their substantive and implemental provisions since the *Finch* court examined Bellinger and Cotton's Annotated Code. The definitions of crime have been revised, the variety of crimes has grown, the sentencing process has

become more sophisticated both in theory and method, and sentences are now subject to subsequent individuation by parole. The underlying philosophy of offenses and penalties under the present code is stated in ORS 161.025(1), which includes the following principles, all of which are in harmony with Article I, Section 15:

"The general purposes of the provisions of this Act [the Criminal Code] are:

"(a)  To ensure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized, the correction and rehabilitation of those convicted, and their confinement when required in the interests of public protection.

"* * * * *.

"(e)  To differentiate on reasonable grounds between serious and minor offenses.

"(f)  To prescribe penalties which are proportionate to the seriousness of offenses and which permit recognition of differences in rehabilitation possibilities among individual offenders.

"(g)  To safeguard offenders against excessive, disproportionate or arbitrary punishment."

The principles of the substantive penal statutes are given effect through application of the executory statutes which provide for probation, incarceration and parole. Statutory sentence authorization allows a sentencing judge to take into account "rehabilitative possibilities among individual offenders," ORS 161.025(1)(f). Parole statutes allow further individuation based on whether the individual convict has realized that potential for reformation so that incarceration is no longer needed for deterrence and public safety. *See* ORS 144.780 and ORS ch 144 generally. This substantive and executory scheme is designed to be harmonious with the objectives of Article I, Section 15. Today, when we examine a penal statute for conformity to the reformation clause, we must do so in the context of a more sophisticated scheme of penal statutes and penological resources.

Article I, Section 15, does not purport to apply to particular sentences, except indirectly in that sentences should be designed to be consistent with the objectives of the criminal code. *State v. Cloutier,* 286 Or 579, 596 P2d

1278 (1979).[2] Nor does the section purport to establish individual rights. Accordingly, a similar provision has been held not to establish an individual's entitlement to parole, *State v. Farrow,* 386 A2d 808 (NH 1978), and the Oregon Court of Appeals has held that it does not require that the state provide reformative therapy to every prisoner, *Kent v. Cupp,* 26 Or App 799, 554 P2d 196 (1967). *See also Eacret v. Holmes,* 215 Or 121, 333 P2d 741 (1958), regarding the rights of others. Although sentences of death most assuredly preclude any possibility of personal reformation, older cases have held a mandatory death sentence to not violate this section. *State v. Finch, supra; State v. Anderson,* 10 Or 448 (1862); *but see post* note 4. "Laws for the punishment of crime" are within the compass of Article I, Section 15; the disposition of individual cases is not, except as statutes under which sentences are imposed are subject to judicial scrutiny for conformity to constitutional requirements, as in this case.

Fourth, "principles of reformation" must be a basis for our penal laws, but they need not be the only basis. Except for "vindictive justice," the section does not preclude other objectives for penal laws. Other utilitarian objectives such as deterrence and public safety have always been judicially recognized as permissible purposes of penal statutes which are nevertheless compatible with Article I, Section 15. Moreover, the penal laws may require that where certain justifying conditions exist, the objective of public safety may override the objective of reformation as a basis for sentencing. For this reason, in *Tuel v. Gladden, supra,* the court upheld the former Habitual Criminal Act which provided for mandatory enhanced sentences for previously convicted offenders. The court held:

> "* * * The Oregon Constitution does not attempt to state all of the principles to be followed by the legislature in enacting sentencing laws. The constitution does contain sentencing restrictions in addition to the above quoted. It requires that 'all penalties shall be proportioned to the offenses'; excessive fines shall not be imposed; and cruel

---

[2] The defendant has challenged the constitutionality of ORS 163.115(5) in general but not the constitutionality of this particular sentence. Whether Article I, Section 15, provides any basis for substantive sentence review is not an issue presented by this case.

and unusual punishments shall not be inflicted. Art I, § 16. The drafters of the constitution, however, did not include the most important consideration of all, the protection and safety of the people of the state. Such a principle does not have to be expressed in the constitution as it is the reason for criminal law. All jurisdictions recognize its overriding importance.

"We interpret Art I, § 15, of the Oregon Bill of Rights to command and require that Oregon sentencing laws have as their object reformation and not retaliation, but they do not require that reformation be sought at substantial risk to the people of the state." (Footnote omitted.) 234 Or at 5-6.

The holding in *Tuel* was not that the legislature could eliminate reformation as a basis for penal statutes in favor of a more favored public purpose. That would directly violate Article I, Section 15. Rather, the court held that a greater minimum sentence may be legislatively required in order to protect public safety. Article I, Section 15, does not preclude the legislature from designating classes of cases based upon specific circumstances, such as a record of prior convictions, which indicate the dangerousness of the offender or the unlikelihood of reformation and requiring greater minimum sentences in such cases in order to protect public safety.

In summary, then, Article I, Section 15, does not require that reformation be the sole basis of Oregon's Criminal Code to the exclusion of deterrence, public safety or other non-vindictive public purposes. It does require that the Criminal code, in its classification of crimes, in its penalty provisions, or in the way the penalties are to be administered, must provide in some manner for the possibility of individual reformation. It is for conformity to that requirement that ORS 163.115(5) must be examined.

The literal terms of ORS 163.115(5) as amended allow no differentiation relating to the likelihood of reformation. It mandates the same severe penalty for every murder convict with no possibility of individual differentiation based upon the background of the offender, the circumstances of the crime or the potential or actual reformation of the convict. The mandatory life sentence aspect of the statute requires the identical treatment of one who

murders a spouse in fear or despair as for a professional murderer, a repeat murderer or a murderer by torture. There is negligible allowance for individuation by parole; the same 25 years without parole must be served by a prisoner who, through maturation and growth, undergoes true reformation and by a murder convict who later murders a penitentiary guard. By allowing no variation either in the life sentence or in the 25 years on mandated incarceration, the statute allows for no individual differentiation in any substantial way (*i.e.,* for at least 25 years) according to the crime or the criminal. Because it makes no allowance in any case for the possibility of reformation, it is inconsistent with Article I, Section 15.[3]

A statute must conform to the constitution whether its source be the Legislative Assembly or the people in their exercise of their reserved legislative power of initiative. *Kadderly v. Portland,* 44 Or 118, 74 P 710, 75 P 222 (1903). The framers of the Oregon Constitution intended that the fundamental principles enunciated in the Bill of Rights circumscribe such legislative impulses as may find popular favor from year to year. As the historian of the Oregon Constitutional Convention explained:

"Throughout the [Constitution] there was evident an intentional design to create limitations upon the exercise of power by the people themselves. Assuming that as voters they had all powers of state government not

---

[3] The contrary holdings in *Finch* and *Anderson* are no longer valid insofar as they uphold a mandatory death penalty. Moreover, the United States Supreme Court has held that a mandatory death sentence is impermissible under the Eighth and Fourteenth Amendments to the United States Constitution. In *Woodson v. North Carolina,* 428 US 280, 304, 96 S Ct 2978, 49 L Ed 2d 944 (1976), that court stated a rationale which is similar in some ways to our discussion of the reformation clause:

"* * * A process that accords no significance to relevant facets of the character and record of the individual offender or the circumstances of the particular offense excludes from consideration in fixing the ultimate punishment of death the possibility of compassionate or mitigating factors stemming from the diverse frailties of humankind. It treats all persons convicted of a designated offense not as uniquely individual human beings, but as members of a faceless, undifferentiated mass to be subjected to the blind infliction of the penalty of death."

*Accord: Lockett v. Ohio,* 438 US 586, 602-05, 98 S Ct 2954, 57 L Ed 2d 973 (1978); *Roberts v. Louisiana,* 431 US 633, 641, 97 S Ct 1993, 52 L Ed 2d 637 (1977); *Roberts v. Louisiana,* 428 US 325, 332-34, 96 S Ct 3001, 49 L Ed 2d 974 (1976).

actually surrendered, they deliberately put bounds to what could be done constitutionally, and in this they carefully followed the models that had been tested by experience elsewhere. It was as though they knew that the expression of the popular will, or the popular desire, might lead to extravagance in action or in expenditures, and they chose to adopt restraints in the interest of good government." Carey, The Oregon Constitution and Proceedings and Debates of the Constitutional Convention of 1856-1857 (C. Carey ed 1926).

On the other hand, if there is any reasonable construction of a statute which will avoid or remedy a constitutional defect, we are obliged to give it that construction. *Tharalson v. Dept. of Revenue,* 281 Or 9, 13, 573 P2d 298 (1978); *State v. Harmon,* 225 Or 571, 577, 358 P2d 1048 (1961); *Wright v. Blue Mt. Hospital Dist.,* 214 Or 141, 144, 328 P2d 314 (1958); *Peninsula Drainage Dist. No. 2 v. City of Portland,* 212 Or 398, 418, 320 P2d 277 (1958). *See also State v. Duggan,* 290 Or 369, 373, 622 P2d 316 (1981). This rule applies with particular appropriateness to initiative measures because the initiative process has no method of legislative scrutiny to work out problems in the proposed legislation. *Cf. Anthony v. Veatch,* 189 Or 462, 495, 220 P2d 433, reh den 189 Or 462, 221 P2d 575, appeal dismissed, 340 US 923, 71 S Ct 499, 93 L Ed 667 (1942). Thus our function in this case should be to construe the initiative amendment to ORS 163.115(5), insofar as we are able, in a way which will give full effect to Article I, Section 15, and also give effect to as much of the legislation enacted by the people as is consistent with the constitution.

For the statute to be constitutional, the mandatory life sentence provision or the deferred parole provision, or both, must be limited so as to provide some degree of recognition of the possibility of individual reformation. The voters clearly intended to enact the greatest permissible penalty for murder and the two provisions should be considered in light of that legislative intent. As to the first provision, for reasons of public safety alone, the gravity of the crime of murder is sufficient to justify that legislative designation as a class of conduct which warrants the mandatory imposition of a sentence of life imprisonment.

If imposition of a life sentence is mandatory, however, some form of individuating device is necessary if the penal laws are to be consistent with Oregon's constitutional philosophy that some criminals are capable of reformation and the constitutional requirement that laws for the punishment of crime must allow for the possibility of reformation. No single form of subsequent review is constitutionally mandated. The legislature could require periodic judicial review for release if the purposes of incarceration have ceased to exist. The form of individuation established in Oregon criminal procedure is parole and ORS 163.115(5) restricts eligibility for parole to a constitutionally impermissible degree.

For purposes of Article I, Section 15, alone, it would not be necessary to invalidate the minimum imprisonment provision in its entirety, as the majority has done under Article I, Section 16. To give effect to as much of ORS 163.115(5) as is consistent with Article I, Section 15, I would confine ORS 163.115(5) to compel imposition of a sentence of life imprisonment and to authorize but not compel the parol authority, for reasons other than vindictive justice, to require that the defendant serve a minimum of 25 years or some lesser period before becoming eligible for parole, depending upon the circumstances of the crime and the background of the defendant and post-conviction facts which reflect upon rehabilitation. This would preserve as much of the initiative act as is constitutionally permissible. It would also eliminate the problem of disproportionality addressed by the majority.

I concur with the majority holding regarding the self-defense instruction.

Linde, J., joins in this specially concurring opinion.