Submitted on record and briefs July 13, affirmed September 20, reconsideration denied October 27, petition for review denied November 23, 1976

KENT, *Appellant,*
*v.*
CUPP, *Respondent.*
(No. 90342, CA 5907)
554 P2d 196

Robert J. Thorbeck, Salem, filed the brief for appellant.

Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Catherine Allan, Assist-

ant Attorney General, Salem, filed the brief for respondent.

Before Schwab, Chief Judge, and Fort and Tanzer, Judges.

TANZER, J.

**TANZER, J.**

Plaintiff was committed to the Oregon State Penitentiary following his conviction in 1955 under former ORS 163.640[1] and sentenced to an indeterminate life sentence. He brings this petition for writ of habeas corpus attacking his continued confinement, alleging that the defendant has failed and refused to provide him with a program or plan for reformation or rehabilitation thus rendering his further imprisonment unlawful under a variety of federal and state constitutional provisions.

The parties stipulated at trial that as a result of his judgment of conviction under ORS 163.640 (now superseded by ORS 163.245 and 163.257) and subsequent sentence to an indeterminate life sentence as a sex offender, plaintiff was permitted to participate in sex offender treatment programs and such other treatment programs as were available at the penitentiary. However, two or three years before trial, his participation was involuntarily terminated because the plaintiff is psychologically sophisticated beyond the effective use of group therapy because he had used it for such a long period of time. Attempts were made by plaintiff to get into treatment programs at the Oregon State Hospital because he believes it will cause the Board of Parole to give him more favorable consideration, but access to any such programs has been denied to plaintiff because the Mental Health Division refuses to accept any Oregon State Penitentiary inmate not adjudged mentally ill. Plaintiff has not been and is not able to be adjudged mentally ill. No rehabilitative programs for treatment of plaintiff's condition are available at the Oregon State Peniten-

---

[1] ORS 163.640 (1955):

"Every person who maliciously, forcibly or fraudulently takes or entices away any child or minor under the age of 16 years, with intent to detain and conceal such child from its parent, guardian or other person having the lawful charge of such child, shall be punished upon conviction by imprisonment in the penitentiary for not more than 25 years or during the natural life of such person, or by a fine not exceeding $10,000, or by both such fine and imprisonment."

[ 801 ]

tiary other than the group therapy program from which he has been involuntarily excluded. Plaintiff believes that the Board of Parole has refused and will continue to refuse to consider plaintiff for a parole if he is not actively participating in a treatment program related to his needs. On March 13, 1975, the Board of Parole reset plaintiff's parole hearing date to March, 1977, and requested that an evaluation from the Oregon State Hospital sexual offenders program be formulated for plaintiff. The prison psychologist concludes that "the only hope for Mr. Kent [plaintiff] is an aging process in which age and maturity will overcome his present psychological difficulties."

The trial court found that plaintiff is not presently participating in any rehabilitative programs and that there are no programs available in this state which would assist plaintiff at this time. It concluded that defendant has not denied plaintiff access to any rehabilitative programs since no rehabilitative programs are available and therefore defendant has not violated plaintiff's constitutional rights. The petition was therefore denied and dismissed without relief.

■ Plaintiff refers us to various authorities suggesting the wisdom of establishing a constitutional right of imprisoned persons to be rehabilitatively treated or else released, but cites no jurisdiction which recognizes such a right. We decline to be the first.[2]

■ The dissent would create a treat-or-release rule under Article I, § 15 of the Oregon Constitution which provides:

> "Laws for the punishment of crime shall be founded on the principles of reformation, and not of vindictive justice."

Beyond its usual interpretation as barring unconscionable sentences in excess of the statutory limitations, *see,* for example, *State v. Hicks,* 213 Or 619, 630, 325

---

[2]We have hitherto declined to establish a " 'right to rehabilitation' " in the context of the right to a speedy trial. *State v. Puckett,* 22 Or App 154, 156-57, 538 P2d 74 (1975).

P2d 794 (1958), *cert den* 359 US 917 (1959); *State v. Franklin,* 11 Or App 239, 240, 502 P2d 392 (1972); *State v. Houck,* 9 Or App 441, 497 P2d 683 (1972), it is significant as a hortative philosophical base for Oregon's penal code and correctional programs. The legislature has provided to the Corrections Division an array of programs for the implementation of that clause.[3] The courts do not have authority to require that additional prison programs be provided, except perhaps in extraordinary circumstances of cruel and unusual punishment, *James v. Wallace,* 382 F Supp 1177 (MD Ala ND 1974), which are not alleged here.

■ The dissent disavows a treat-or-release rule. It would remand to order the Corrections Division to provide a program for plaintiff. The only enforcement mechanism in a habeas corpus suit, however, is release. ORS 34.310, 34.590. Habeas corpus is not a procedural vehicle whereby the courts are empowered to require the Corrections Division to expend its limited program resources on those whom it deems would not benefit from them except by the accumulation of a paper record in hopes of favorably impressing the Board of Parole. Furthermore, the plan of the Corrections Division to allow plaintiff to overcome his psychological difficulties by the process of maturation and to separate him from society during that process and until parole, may well be the most appropriate program of reformation for this particular inmate. We have no persuasive reason in this case to second-guess that administrative decision by ordering plaintiff to be released if not treated.

Affirmed.

**FORT, J.,** dissenting.

The majority has set forth the facts. The trial court

---

[3] The reliance of the dissent upon ORS 421.155 is misplaced. It pertains only to those adjudged to be dangerous offenders and gives no direction as to other convicts.

held a hearing and entered the following:
"FINDINGS OF FACT

"That plaintiff, an inmate at the Oregon State Penitentiary, is not presently participating in any rehabilitative programs and that there are no programs available in this State which would assist Plaintiff at the present time."

And
"CONCLUSIONS OF LAW

"That defendant has not denied plaintiff access to any rehabilitative programs since no rehabilitative programs are available and therefore defendant has not violated plaintiff's constitutional rights as alleged."

Based thereon it denied the petition for writ and dismissed without relief. Plaintiff appeals.

As the court points out, the matter was tried only upon stipulated facts. No other evidence was received.

The trial court concluded that since "it has become obvious to the Court that there is no such plan or program available through the facilities at the penitentiary or the State Hospital," plaintiff was not entitled to relief.

Oregon Constitution, Art I, § 15, provides:

"Laws for the punishment of crime shall be founded on the principles of reformation, and not of vindictive justice."

In *Specht v. Patterson,* 386 US 605, 87 S Ct 1209, 18 L Ed 2d 326 (1967), a unanimous court, considering the Colorado Sexual Offenders Act, pointed out:

"* * * These commitment proceedings whether denominated civil or criminal are subject both to the Equal Protection Clause of the Fourteenth Amendment as we held in *Baxstrom v. Herold,* 383 U.S. 107, and to the Due Process Clause. We hold that the requirements of due process were not satisfied here." 386 US at 608.

*Accord: United States v. Maroney,* 355 F2d 302 (3d Cir 1966). *See also: Humphrey v. Cady,* 405 US 504, 92 S Ct 1048, 31 L Ed 2d 394 (1972); *Baxstrom v. Herold,* 383 US 107, 86 S Ct 760, 15 L Ed 2d 620 (1966).

Here it is conceded that defendant was sentenced to an indeterminate life sentence and remains confined under the provisions governing the sentencing of the sexually dangerous offender in force at the time of sentence (former ORS 137.116 and 137.112 to 137.115).

The indeterminate sentence law expresses the intention of the legislature to make Article I, Section 15 of the Oregon Constitution meaningful. Recently in *In Re Grey,* 11 Cal 3d 554, 114 Cal Rptr 104, 522 P2d 664 (1974), the Supreme Court of California described the purposes of its indeterminate sentence law:

> "Petitioner's theory must be rejected as inconsistent with the policy behind our Indeterminate Sentencing Law and the parole system. As indicated in *In re Kapperman,* [11 Cal 3d 542, 114 Cal Rptr 97, 522 P2d 657 (1974),] this policy reflects an emphasis on reformation of the offender, a policy which the Legislature has sought to effectuate by giving broad discretionary powers to the Adult Authority. The terms of incarceration and parole are to be fixed in accordance with the adjustment and social rehabilitation of the prisoner after consideration of the merits of each individual case. * * *" 11 Cal 3d at 556.

The Oregon Criminal Law Revision Commission in its Final Draft and Report, in Commentary C to its Section 74 establishing maximum criminal penalties for felonies, states:

> "The section is not intended to disturb the provisions of ORS 137.120 regarding indeterminate sentences, but rather to complement them. This state's legislative policy regarding the use of the indeterminate sentence has been on the books since 1939 when Oregon abolished mandatory minimum periods of imprisonment for felonies. The statute allows the court to fix a maximum term of imprisonment within the legislatively established limits. Compared to most other states, Oregon indeed has shown an enlightened approach to this particular aspect of sentencing." Commentary, Proposed Oregon Criminal Code 72, Art 8, § 74 (1970).

ORS 137.120(2) defines the term indeterminate sen-

tence. It seems apparent that ORS 421.155 by its very terms is a further expression of legislative intent to implement Article I, Section 15 of the Oregon Constitution in a meaningful but realistic way.

The court here concludes that ORS 421.155 is no guide to the obligations of the state to anyone not sentenced as a dangerous offender, and particularly not to one sentenced to an indeterminate life sentence under the former sexually dangerous offender act. I disagree. In the first place, the dangerous offender statutes (ORS 161.725 and 161.735) did not exist at the time this defendant was sentenced nor for many years thereafter. And in the second place, in my opinion the doctrine announced in *In Re Grey, supra,* concerning the indeterminate sentence law, correctly reflects the intent of the Oregon legislature in its adoption of the indeterminate life sentence for the sexually dangerous offender statute as it existed at the time of defendant's conviction and sentence.

I do not by this opinion, as the majority states, suggest the adoption of "a treat-or-release rule" in Oregon as a requirement under Article I, Section 15 of the Oregon Constitution. Rather, I suggest here first that the state does have a duty to make available to those confined by it against their will programs which are or may reasonably be made available to assist in their reformation, and second that the legislature by the adoption of the indeterminate sentence for the sexually dangerous offender law, as well as the dangerous offender act, has sought to require that the state do so.

The court's opinion seems to suggest that Article I, Section 15 of the Oregon Constitution should be regarded as merely hortatory language except as it bars "unconscionable sentences in excess of the statutory limitations." I would point out first that it would not seem necessary to have the provision in the constitution at all to accomplish the latter objective. Second, and more important, I most emphatically

disagree that any provision of the Bill of Rights of the Oregon Constitution can be considered only as an hortatory expression. Yet if Section 15 is to be considered only as hortatory, why does not that rationale apply to all the other great human rights described in Article I? The majority points to no Oregon decision so holding. I am aware of none.

I would hold that ORS 421.155, construed in the light of Oregon Constitution, Art I, § 15, and ORS 137.120(2), requires only that the administrative agencies charged with responsibilities under those provisions are required to make reasonable efforts with respect to those convicted of or incarcerated for crime to make available, within the ambit of their overall responsibility to protect the public, to utilize and develop their special experience and expertise (*In Re Grey, supra,* 11 Cal 3d at 556) in the application and development of realistic programs professionally designed and reasonably calculated, within the limits of available knowledge and skills, to achieve the constitutionally mandated objective of reformation. Oregon Constitution, Art I, § 15.

The brief record here reveals only that there is no treatment program other than the passage of time "available" for plaintiff within the penitentiary, but not why, and that the Mental Health Division will not accept for any treatment purpose any prisoner not adjudicated as mentally ill, but not why. Accordingly, I would vacate the order dismissing the writ and remand the matter to the circuit court for further hearing to determine whether the failure of the state to make any treatment program available[1] to plaintiff is consistent with its constitutionally enjoined (Oregon Constitution, Art I, § 15) and legislatively ordered (ORS 137.120(2) and 421.155) responsibility to make reasonable efforts to assure the availability of a

---

[1] Nothing in this opinion is intended to suggest application of different standards in the reformation phase of a criminal case with respect to budgetary authority than those described in *State ex rel Juv. Dept. v. L.,* 24 Or App 257, 546 P2d 153, Sup Ct *review denied* (1976).

[ 807 ]

program relevant to the reformative needs of this plaintiff.

For the foregoing reasons, I respectfully dissent.