Argued and submitted December 23, 1981, affirmed September 1, 1982

## McCULLER,
*Respondent,*
*v.*
## GAUDRY et al,
*Appellants.*

(No. A7905-02323, CA A20157)

650 P2d 148

Dana R. Taylor, Portland, argued the cause for appellants. With him on the briefs were Howard R. Hedrick, Portland.

Robert Thuemmel, Portland, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

## WARDEN, J.

In this civil action, defendants appeal a judgment, based on a jury verdict, awarding plaintiff damages for unlawful discrimination in a place of public accomodation, ORS 30.680,[1] and for assault and battery. Defendants assign as the sole error the trial court's failure to sustain defendants' objection to the introduction of evidence of a determination by the Bureau of Labor and Industries (Bureau), two years earlier, that defendants had a policy of discrimination in the operation of a supper club.

On September 5, 1978, plaintiff went to The Great Gatsby's, a bar and nightclub in Portland, to have a drink. The Great Gatsby's is owned and operated by defendants. Plaintiff was dressed in leather shoes and jacket, a sweater and pressed, starched denim jeans. After paying the cover charge, plaintiff was told by the "bouncer," Joseph Fitzpatrick, that he could not come in because he did not meet the standards of the club's dress code. On inquiring further, plaintiff was told that the club did not allow patrons to enter wearing jeans. Before plaintiff left the club, he looked around the bar and saw several persons wearing jeans. After asking for an explanation from Fitzpatrick and receiving no satisfactory reply,[2] plaintiff attempted to gain entry by going around Fitzpatrick. A scuffle took place, in which plaintiff was injured when he was knocked against a wall. Plaintiff testified that, when he asked to see the manager, Fitzpatrick stated, "What do you

---

[1] ORS 30.680 provides:

"All persons against whom any distinction, discrimination or restriction on account of race, religion, sex, marital status, color or national origin has been made by any place of public accommodation, as defined in ORS 30.675, by any person acting on behalf of such place or by any person aiding or abetting such place or person in violation of ORS 30.685 shall have a cause of action to recover compensatory and punitive damages from the operator or manager of such place or the employe or person acting on behalf of such place or the aider or abettor of such place or person. In the action the operator or manager of such place, the employe or person acting on behalf of such place or the aider or abettor of such place or person shall be jointly and severally liable. Any person recovering damages under this section shall be entitled to reasonable attorney fees at trial and on appeal as determined by the court in addition to costs and necessary disbursements.

[2] Plaintiff testified at trial that Fitzpatrick told him "he knew that guy, he liked that guy; he didn't know me, he didn't like me. And I couldn't come in."

need the manager for? You're just a loud mouth black. What do you want to see him for? What do you think he is going to do?" Fitzpatrick denied saying that. Plaintiff testified that when the manager, defendant Marc Gaudry, arrived the manager told him:

> "The bouncer knows his job. He knows what he's doing. * * * You just came out here to cause trouble like all of the other blacks, and you are not going to get in."[3]

Plaintiff left the club, went across the street and called the police. The two officers who responded to the call testified that when they entered The Great Gatsby's they observed persons wearing jeans and that plaintiff was dressed as well as anyone inside.

During the trial, defendant Larry Gaudry (Gaudry) was called as an adverse witness and was asked on direct examination by plaintiff's counsel:

> "[H]as a determination ever been made previously in time to this incident that you exercised or had a standard practice of discouraging patronage of racially mixed couples and blacks on your premises?"

Defendant's counsel objected on the basis of relevancy and undue prejudice. After a colloquy between the trial court and counsel, and over defendants' objection, plaintiff was allowed to ask:

> "Isn't it a fact, Mr. Gaudry, that the Department of Labor of the Civil Rights Division of the State of Oregon made a determination that in your establishment in 1976 such a policy of exclusion of black individuals did exist?"

Gaudry responded, "That was their opinion."[4] Defendants assign as error the overruling of their objections, contending that the prior determination by the Bureau of Labor is irrelevant and highly prejudicial to defendants' case. Our review is limited to whether defendant's objection should have been sustained on either ground asserted.[5]

---

[3] Defendant Marc Gaudry was not present at trial.

[4] See *Gaudry v. Bureau of Labor & Ind.*, 48 Or App 589, 617 P2d 668 (1980), in which the finding of discrimination was not specifically challenged.

[5] We are not called on to consider whether defendant's objections might have been sustainable on grounds other than those asserted in the trial court and we do not do so.

■ We first examine the relevancy question. The intent to practice racial discrimination exists in the mind of the person practicing it and, unless it is an openly declared policy, is apt to be difficult to prove. It may be masqueraded in a dress code, literacy requirement or other restriction without reference to race. An inference drawn from the conduct giving rise to the particular charge or cause of action may be the only proof available. Certainly, evidence that a defendant has previously been found to have a policy of racial discrimination would be highly relevant. We conclude that the Bureau's determination of a past policy of discrimination is relevant to plaintiff's case. This conclusion is supported by language in *School Dist. No. 1, Mult. Co. v. Nilsen,* 262 Or 559, 499 P2d 1309 (1972). There the court held that the attorney general was entitled to include general charges of discrimination, in addition to the particular charges being brought before the Commissioner of Labor, saying:

"The scope of inquiry under the specific charges of discrimination is sufficiently broad to inquire into the past conduct of the District generally in relation to blacks, because proof of past discrimination against blacks would lend credence to complainant's specific charges of discrimination against her." 262 Or at 570.

■ We next examine whether the evidence of a prior determination of discrimination has a potential for prejudice that outweighs its probative value. Any evidence which tends to prove a matter in issue is "prejudicial" to the party against whom it is produced. The question is whether its potential to inflame the minds of jurors outweighs its probity. In this case, the evidence of a prior policy of exclusion of blacks, although possessing potential for prejudice, goes to the very heart of plaintiff's cause of action for unlawful discrimination. We conclude that its probative value outweighs its potential for unfair prejudice.

We hold that evidence of the Bureau's determination of defendant's policy of discrimination, being highly relevant and having probative value outweighing any potential for prejudice, was admissible as substantive evidence in plaintiff's case. The trial court did not err in admitting it.

Affirmed.