Argued and submitted June 3, reversed and remanded November 10, 2004

## Kastunya L. WILLIAMS,
*Appellant,*

*v.*

## FREIGHTLINER, LLC,
dba Freightliner Corporation,
dba Freightliner,
*Respondent.*

0112-12608; A121213

100 P3d 1117

Kerry M. L. Smith argued the cause for appellant. With him on the briefs was Smith & Fjelstad.

Jeffrey M. Kilmer argued the cause for respondent. With him on the brief were Gregory B. Snook and Kilmer, Voorhees & Laurick, P.C.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

## BREWER, C. J.

In this employment termination case, plaintiff alleged in her first claim for relief that defendant terminated her employment in violation of ORS 659A.040(1), which provides, in part, that "it is an unlawful employment practice for an employer to discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in" the workers' compensation law. In her second claim for relief, plaintiff alleged that defendant violated ORS 659A.043(1) by failing to reinstate her to her previous position after her physician provided a complete medical release for plaintiff to perform the job she was performing before her on-the-job injury.[1] On cross-motions for summary judgment, the trial court granted defendant's motion and denied plaintiff's motion. The trial court's judgment dismissed both of plaintiff's claims. Plaintiff assigns error to the trial court's grant of defendant's motion for summary judgment.[2] We reverse and remand.

■ We review the summary judgment record to determine whether there are genuine issues of material fact and whether the moving party, defendant in this case, is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). In making that determination, we view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the nonmoving party, in this instance plaintiff. *Id.* at 408. We will affirm only if no objectively reasonable factfinder could return a verdict for plaintiff. ORCP 47 C. Because, as explained below, plaintiff established the existence of a genuine issue of material fact regarding defendant's motive in terminating her employment, the trial court erred in granting summary judgment.

---

[1] ORS 659A.043(1) provides, in part, that "[a] worker who has sustained a compensable injury shall be reinstated by the worker's employer to the worker's former position of employment upon demand for such reinstatement, if the position exists and is available and the worker is not disabled from performing the duties of such position."

[2] Plaintiff does not assign error to the denial of her motion for summary judgment.

We begin with the undisputed facts. Defendant, a manufacturer of heavy-duty trucks, hired plaintiff as a painter's helper in July 1999. In November 1999, plaintiff injured her right hand at work; she filed a workers' compensation claim in connection with the injury. Plaintiff's physician released her to work in early November with several restrictions. Specifically, plaintiff's physician instructed her not to use her right hand; not to reach or stoop; not to drive or operate heavy equipment; and to avoid "forceful repetitive gripping." A couple of days later, after another visit, plaintiff's physician modified her restrictions to include only the avoidance of forceful repetitive gripping and limitations on her use of a caulking gun. Later in November, plaintiff's physician once again modified her work restrictions, instructing her only to avoid forceful repetitive gripping with her right hand. The work restrictions imposed by plaintiff's physician were reflected on defendant's "transitional duty return to work" forms.

In light of her work restrictions, plaintiff was assigned to a "light duty" position that involved preparing plastic parts for painting. On December 2, 1999, plaintiff's job was to remove plastic truck visors from a box, lightly sand each one, and then place the visor on the top of a rack for painting. The rack was about five and one-half feet above the ground. The visors, which attached to the front of the truck's cab roof extending over the top of the windshield, were about five feet long and one foot wide and weighed about 15 pounds.

At this point in the chronology, the parties' versions of events diverge. According to plaintiff, during her December 2 shift, she told her supervisor, Gary Wilson, that the job was hurting her wrist and that the job was outside her work restrictions. Plaintiff's wrist was swollen. Wilson took plaintiff to see the painting supervisor, Randy Whiting, who, according to plaintiff, told her to go home and see her doctor. According to plaintiff, she was not told that she was suspended or that she was facing termination that day for failing to perform her duties. Whiting told plaintiff, by her account, "I want you to go see a doctor, get a note and take care of this" and, according to plaintiff, "[t]hat's exactly what I did."

Defendant views the events of December 2 somewhat differently. In his affidavit, Wilson recounted the events:

"At the beginning of the shift on the date in question, Ms.Williams declined to do the work I assigned her, saying, 'No, it is too repetitive and I have to lift above my head.' I offered to get her a stool, and told her that the job was less repetitive than her previous day's job. Ms. Williams again shook her head 'no.' I then took her to see painting supervisor Randy Whiting. I explained the problem to Ms. Williams. He then instructed Ms. Williams to do the job. Ms. Williams argued with Whiting. He replied that she would have to do the job, that it was in her work restrictions, or go home without pay. He told her she would be suspended pending termination."

The parties' versions of the facts again generally converge after that December 2 incident. Later on December 2, plaintiff saw her physician, who diagnosed her with carpal tunnel syndrome in her right wrist. Plaintiff's physician again instructed her to avoid forceful repetitive gripping with her right hand; in addition, he told her not to lift over four pounds with her right hand.

The next day, plaintiff went to see production manager Steve Breum. She reported that she felt that Whiting was harassing her. She believed that Whiting had asked her to do work outside her restrictions. Breum told plaintiff to return to work for her regular shift on December 6. Plaintiff came to work on the night of December 5 to begin her December 6 graveyard shift. She met with Whiting and shift manager Rue Haberman. They told her that they had received information from her physician that she could lift up to 25 pounds, rather than the four pounds that plaintiff believed was the restriction. The supervisors, however, could not show plaintiff any proof of the claimed 25-pound restriction.[3] Moreover, the four-pound restriction imposed by plaintiff's physician was not reflected in the December 5 "transitional return to work" form created by defendant. After the meeting, the supervisors instructed plaintiff to return to

---

[3] According to plaintiff, her physician never told her supervisors that she could lift 25 pounds.

work with the four-pound restriction. Although she worked most of her early-morning shift, plaintiff left early because she again was experiencing pain in her hand. Plaintiff visited her physician later that same day, and he signed a medical release that included a restriction that plaintiff could not lift over five pounds with her right hand.

On December 7, when plaintiff arrived for her December 8 graveyard shift, she met with Whiting, another manager, and her shop steward. At that meeting, Whiting told plaintiff that he was terminating her employment for insubordination. According to Whiting, "The only reason Ms. Williams was terminated is because of her flat refusal to do work which was completely within the restrictions then in effect. Such a refusal always results in termination."

After she was terminated, plaintiff filed a complaint with the Bureau of Labor and Industries (BOLI). In its written response to plaintiff's complaint, defendant—through its human resources manager, Gary Garr—stated that plaintiff was "discharged for her refusal to perform work within her restrictions on two occasions, December 2 and December 6, 1999."

In mid-September 2000, plaintiff's physician gave her a complete and unrestricted release to return to work. She made a timely demand for reinstatement, and defendant refused to place her in the job she previously had held.

■ On appeal, plaintiff claims that the trial court applied the wrong legal standard in granting defendant's motion for summary judgment on her first claim for employment discrimination under ORS 659A.040(1). Specifically, she asserts that the trial court improperly applied the federal "burden-shifting" analysis to her claim—an analysis that requires a plaintiff to rebut evidence of an employer's stated nondiscriminatory ground for termination with evidence that the claimed ground is pretextual. Defendant responds that there is no indication in the record that the court applied the "burden-shifting" analysis but that, even if the court did apply the wrong analysis, the result was right under the correct analysis. *See generally Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (explaining the "right for the wrong reason" rationale for

affirmance).[4] We agree with plaintiff that the trial court appears to have incorrectly applied the federal "burden-shifting" analysis.

Federal courts apply a three-step burden-shifting analysis to summary judgment motions in employment discrimination cases under Title VII of the Civil Rights Act of 1964:

> "[F]irst, the plaintiff has to present a *prima facie* case; next the employer has the burden of 'articulating' a legitimate nondiscriminatory reason for the apparently discriminatory action; and[, third] the plaintiff finally takes on a burden to demonstrate that the employer's articulated reason is pretextual or was not the real reason for the action."

*Callan v. Confed. of Oreg. Sch. Adm.*, 79 Or App 73, 76, 717 P2d 1252 (1986) (citing *McDonnell Douglas Corp. v. Green*, 411 US 792, 93 S Ct 1817, 36 L Ed 2d 668 (1973)). Oregon courts, however, have rejected that approach. *See Lansford v. Georgetown Manor, Inc.*, 192 Or App 261, 277, 84 P3d 1105 (2003), *adh'd to on recons*, 193 Or App 59, 88 P3d 305, *rev den*, 337 Or 182 (2004) ("[w]e do not follow the federal approach to pretext claims under Oregon law"); *Henderson v. Jantzen, Inc.*, 79 Or App 654, 657, 719 P2d 1322, *rev den*, 302 Or 35 (1986) (in *Callan*, "we rejected the shifting burden formula of *McDonnell Douglas*"); *Callan*, 79 Or App at 77 ("We conclude that the burden does not shift from the plaintiff in Oregon discrimination actions in which the issue is simply whether the plaintiff's allegation or the employer's denial of discrimination is correct.").

The trial court's order granting defendant's motion for summary judgment and denying plaintiff's motion for

---

[4] *See also Dade County School Board v. Radio Station WQBA*, 731 So 2d 638, 644-45 (Fla 1999) (describing right-for-the-wrong-reason doctrine under the colorful moniker "tipsy coachman" rule). The "tipsy coachman" label comes from a 19th century Georgia case, *Lee v. Porter*, 63 Ga 345, 346 (1879), in which the Georgia Supreme Court, noting that the "human mind is so constituted that in many instances it finds the truth when wholly unable to find the way that leads to it," quoted the following verse by Oliver Goldsmith:

> "The pupil of impulse, it forc'd him along,
> His conduct still right, with his argument wrong;
> Still aiming at honor, yet fearing to roam,
> The coachman was tipsy, the chariot drove home."

summary judgment includes the following handwritten notation by the trial judge: "[B]ased upon the record before it, the Court finds that plaintiff failed to produce any evidence to rebut defendant's nondiscriminatory explanation for plaintiff's termination." That statement suggests, as plaintiff argues, that the trial court applied a burden-shifting analysis. And as the authorities set out above make clear, that was error. But that is not the end of our analysis. For, as defendant argues, we must affirm the trial court's judgment if that court's disposition nonetheless would have been correct under the proper analysis. We proceed to that question.

ORS 659A.040(1) provides:

> "It is an unlawful employment practice for an employer to discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in ORS chapter 656 or has given testimony under the provisions of those laws."

██ To establish a *prima facie* case under that provision, a plaintiff must show

> " '(1) that the plaintiff invoked the workers' compensation system; (2) that the plaintiff was discriminated against in the tenure, terms or conditions of employment; and (3) that the employer discriminated against the plaintiff in the tenure or terms of employment because he or she invoked the workers' compensation system.' "

*Hardie v. Legacy Health System*, 167 Or App 425, 433, 6 P3d 531 (2000), *rev den*, 332 Or 656 (2001) (quoting *Stanich v. Precision Body and Paint, Inc.*, 151 Or App 446, 457, 950 P2d 328 (1997)). Here, defendant concedes that plaintiff satisfied the first two elements of a retaliatory discrimination claim and neatly frames the issue we must decide. According to defendant, "[t]his appeal comes down to a single essential issue: did plaintiff produce any evidence from which a jury could infer that Freightliner fired her because she invoked the workers' compensation system, rather than for insubordination?" As we explain below, we conclude that the answer is "yes."

Plaintiff points to several different aspects of the evidence that she produced, from which, she asserts, a jury could find that defendant fired her because she invoked her

rights under the workers' compensation system. That is, according to plaintiff, she presented evidence from which a jury could find that defendant acted with discriminatory intent. Plaintiff asserts first that there is a factual dispute about whether she was fired for her conduct on December 2 or whether her termination resulted from her conduct on both December 2 and December 6. She argues that, even if she was "suspended pending termination" on December 2, a jury could conclude that her termination was in response to her invocation of the provisions of the workers' compensation law. Alternatively, she asserts that, if she was "discharged for her refusal to perform work within her restrictions on two occasions, December 2 and December 6, 1999"—as defendant stated in response to her BOLI claim—there is even more evidence from which a jury could find that she was terminated for an impermissible purpose. Defendant responds that (1) the only evidence in the record is that plaintiff was terminated solely for her insubordination on December 2, and (2) therefore, any evidence of discriminatory intent that stems from defendant's conduct between December 2 and December 6 is irrelevant. Defendant claims more generally that "there was no evidence creating a question of fact as to the existence of a discriminatory motivation for the termination decision." As explained below, we agree with plaintiff that there are genuine issues of material fact regarding defendant's motivation in firing her. We turn to the record in that regard.

Viewing the record in the light most favorable to plaintiff, on December 2, plaintiff complained that a previously reported work injury had become more painful and that the work she was required to perform was outside the restrictions imposed by her physician. Plaintiff's supervisor told her to go home and see her physician and, according to defendant, she was terminated based on those events. No one told her that she was being suspended pending termination or that she was being disciplined. Thus, there is evidence in the record from which a jury could find that defendant terminated plaintiff for reporting that a previously reported condition had become worse and complaining that she was being required to work outside the restrictions imposed by her physician. Defendant responds that there is no evidence in the record that plaintiff's job duties were outside her work

restrictions or that her complaint on December 2 constituted a report of an additional or worsening injury. We disagree.

It may be, as defendant suggests, that a jury could find from the evidence that plaintiff did not actually report an additional or worsening injury and that her job duties were within her work restrictions. A jury could find that she was fired for insubordination. But viewing the evidence in the light most favorable to plaintiff, as we must, a jury could instead believe plaintiff's evidence—that she merely followed defendant's instructions in going home, that she reported a worsening of her injury, that the job duties about which she complained actually were outside her work restrictions—and infer from that evidence that defendant terminated plaintiff's employment for reasons related to her workers' compensation claim and not for insubordination.

In addition, plaintiff produced evidence that the decision to terminate her was not actually made until December 6 and that her conduct between December 2 and December 6 affected that decision. Defendant concedes that there is an issue of fact regarding whether plaintiff was terminated solely for her December 2 conduct, but remonstrates that "it is hardly 'material.' " As plaintiff points out, however, if a jury believed that she was not terminated until December 6, there is additional evidence in the record that would support a finding that defendant acted with discriminatory intent. Specifically, plaintiff presented evidence about (1) the four-pound lifting restriction that her physician imposed on December 2 (together with the first-time carpal tunnel syndrome diagnosis), (2) plaintiff's report that her supervisor was giving her a hard time, was harassing her, and had asked her to work outside her restrictions, (3) defendant's attempt to convince plaintiff that her physician had imposed a 25-pound lifting restriction, (4) defendant's failure to include plaintiff's work restrictions on its "transitional duty return to work" form, and (5) defendant's notation that plaintiff left work early on December 6 due to injury. In short, plaintiff adduced evidence from which a jury could find that, shortly before she was fired, defendant required plaintiff to work outside her work restrictions, that plaintiff had complained about it, and that plaintiff had reported a worsening of her injury by presenting her new

work restrictions to defendant and by leaving early "due to injury" on December 6.

From the foregoing facts, a jury could infer that plaintiff was terminated because she had filed a workers' compensation claim, had reported a worsening of the injury, and had complained about the way that defendant was refusing to accommodate her. This court has described a plaintiff's burden in an employment discrimination case as "being so minimal that it is virtually impervious to a motion based on evidentiary insufficiency." *Callan*, 79 Or App at 78 n 3. We also have emphasized that, after a plaintiff has presented evidence of discrimination, evidence of an employer's nondiscriminatory motive in terminating an employee will not support summary judgment. *Hardie*, 167 Or App at 437. Here, factual questions about why and under what circumstances defendant terminated plaintiff's employment made summary judgment inappropriate. *See Lansford*, 192 Or App at 276 (" 'The intent to practice * * * discrimination exists in the mind of the person practicing it and, unless it is an openly declared policy, is apt to be difficult to prove. * * * An inference drawn from the conduct giving rise to the particular charge or cause of action may be the only proof available.' " (Quoting *McCuller v. Gaudry*, 59 Or App 13, 17, 650 P2d 148 (1982).).

■ Finally, we turn to plaintiff's second claim, in which she alleges that she was entitled to reinstatement after her physician released her. ORS 659A.043 provides, in part, that "[a] worker who has sustained a compensable injury shall be reinstated by the worker's employer to the worker's former position of employment upon demand for such reinstatement, if the position exists and is available and the worker is not disabled from performing the duties of such position." Defendant states that the "parties appear to agree" that if summary judgment was inappropriate on plaintiff's first claim under ORS 659A.040, it also was inappropriate with respect to her claim for reinstatement under ORS 659A.043. We also agree. It follows that the trial court erred in granting defendant's motion for summary judgment on plaintiff's second claim.

Reversed and remanded.