Submitted on record and briefs December 2, 2005, affirmed November 15, 2006

## JACOB BARRETT,
*Appellant,*

*v.*

## Brian BELLEQUE,
Superintendent,
Oregon State Penitentiary,
*Respondent.*

## 05C-11516; A127929

150 P3d 1064

Jacob Barrett filed the brief *pro se.*

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Kathleen Cegla, Assistant Attorney General, filed the brief for respondent.

Before Edmonds, Presiding Judge, and Linder and Wollheim, Judges.

LINDER, J.

Edmonds, P. J., concurring.

**LINDER, J.**

Plaintiff appeals a judgment denying, *sua sponte*, his petition for a writ of habeas corpus. *See* ORS 34.370(6) (providing that court may, on its own motion, enter a judgment denying a meritless petition).[1] On appeal, he raises four assignments of error; we write to address only one of his arguments, rejecting the others without discussion. For the reasons that follow, we affirm.

We recite the facts relevant to the issues raised on appeal in a manner consistent with the allegations in plaintiff's 46-page handwritten petition. Plaintiff alleged that, in September 2004, Department of Corrections staff accused him of engaging in a "mutual fight" with another inmate and of striking a corrections officer who attempted to intervene. Plaintiff "declined to attend" the subsequent hearing at which a hearings officer found the accusations to be true. As a result of the fight, the Department of Corrections imposed sanctions, including placement in the Disciplinary Segregation Unit. Plaintiff alleged that he later was transferred to the Intensive Management Unit (IMU) at Snake River Correctional Institution as additional punishment for the fight and assault on the corrections officer. Plaintiff sought administrative review of his IMU placement and, according to plaintiff, the placement was upheld.

In his petition, plaintiff asserted that he was entitled to a hearing before being placed in the IMU; that the placement was a second punishment for acts for which he already had been sanctioned; and that his IMU placement violated various state and federal constitutional provisions "because it is based on false charges and false evidence." Plaintiff's theory was, as we understand it (and as is relevant to his arguments on appeal), that placement in the IMU constitutes punishment (that is, a deprivation of a constitutionally protected liberty interest) and that he was entitled to a hearing

---

[1] ORS 34.370(7) provides that a "meritless petition" for purposes of dismissal under ORS 34.370(6) "means one which, when liberally construed, fails to state a claim upon which habeas corpus relief may be granted." In reviewing a dismissal under ORS 34.370(6), we construe the petition liberally and assume the truth of all well-pleaded allegations and all reasonable inferences that follow from them. *Riley v. Baldwin*, 143 Or App 404, 407, 923 P2d 687 (1996).

before being assigned to that unit. The trial court denied the petition, stating that there is no constitutional right to placement outside the IMU and citing *Troxel v. Maass*, 120 Or App 397, 400, 853 P2d 294 (1993).

In *Troxel*, this court considered and rejected an inmate's habeas corpus challenge to the conditions of confinement in the IMU, stating:

> "Petitioner's remaining claims * * * do not state a claim for relief. He argues that, because he served a six-month sanction in disciplinary segregation, his subsequent placement in IMU constitutes double jeopardy. However, placement in IMU is not punitive, so double jeopardy does not apply. There is not, as petitioner argues, a constitutional right to reformation or rehabilitation. *Kent v. Cupp*, 26 Or App 799, 802, 554 P2d 196 (1976). Finally, petitioner has no constitutional right to placement outside of IMU. Therefore, his argument that he has a right to hearing concerning his placement in IMU fails. *See Hewitt v. Helms*, 459 US 460, 103 S Ct 864, 74 L Ed 2d 675 (1983)."

120 Or App at 400.

On appeal, plaintiff asserts that the trial court erred in relying on *Troxel*, because conditions have changed in the IMU to such an extent that placement there constitutes punishment. He argues that he alleged facts in his petition sufficient to show that he was being placed in the IMU for punitive purposes and that he was entitled to challenge the placement "by presentation of evidence." He asserts that he "has a constitutional right to Due Process in placement in" the IMU.

■ We do not reach the merits of plaintiff's constitutional argument because we conclude that he was not entitled to raise his challenge in a petition for a writ of habeas corpus.[2] We emphasize that plaintiff explicitly disavows any

_____

[2] Although the trial court denied the petition—at least in part—on the ground that it was governed by the holding in *Troxel*, we may affirm on any ground supported by the record. *See Williams v. Freightliner, LLC*, 196 Or App 83, 89 n 4, 100 P3d 1117 (2004) (describing "right for the wrong reason" doctrine); *Frady v. Morrow*, 169 Or App 250, 254, 9 P3d 141 (2000) (applying doctrine in context of *sua sponte* denial of habeas corpus petition). On appeal, defendant superintendent raises the unavailability of habeas corpus relief as an alternative basis for affirmance.

intention of challenging the conditions of confinement in the IMU, stating, "Nowhere did plaintiff challenge the IMU conditions in his claims for relief." Rather, he is challenging a denial of procedural due process under the Fourteenth Amendment to the United States Constitution in the housing classification decision. That, however, is a claim that can be raised in a manner other than by petition for a writ of habeas corpus.

■        "Habeas corpus is an appropriate remedy when a petitioner has 'no other timely remedy available,' and there is a 'need for immediate judicial scrutiny' of the claim." *Haskins v. Palmateer*, 186 Or App 159, 163, 63 P3d 31, *rev den*, 335 Or 510 (2003) (quoting *Gage v. Maass*, 306 Or 196, 204, 759 P2d 1049 (1988)). As the Supreme Court explained in *Penrod / Brown v. Cupp*, 283 Or 21, 28, 581 P2d 934 (1978),

> "we emphasize the two essential elements that must coincide to make the writ of habeas corpus a proper instrument of judicial inquiry: The need for immediate attention, if this appears from the urgency of the harm to which the prisoner claims to be exposed or if it is found to be required as a matter of constitutional law, and the practical inadequacy of an alternative remedy to meet this need."

This court and the Supreme Court consistently have, in a number of different contexts, concluded that habeas corpus plaintiffs had other adequate remedies.

For example, in *Keenan v. Peterson*, 307 Or 323, 325, 767 P2d 441 (1989), in the context of a challenge to random monitoring of telephone calls in prison, the court said, "An injunction proceeding, an action for declaratory judgment or a mandamus proceeding all would be sufficiently timely to adjudicate petitioner's claims." In *Gage*, the inmate challenged the failure to credit him for time served. The court said, "Want of a timely remedy alone is not sufficient. That want must be coupled with a need for immediate judicial scrutiny in order for the rule of *Penrod/Brown* to apply. Plaintiff has not shown a need for that immediate scrutiny." 306 Or at 204. The court also stated, "[W]e note that injunction, declaratory judgment or mandamus proceedings might be vehicles for plaintiff to cause the sheriff to perform the duty mandated by ORS 137.320(1) if the sheriff has not

already done so." *Id.*; *see also Weidner v. Zenon*, 124 Or App 314, 317, 862 P2d 550 (1993) ("Petitioner's second petition alleges that he has been denied handicapped access to a food slot, outside recreation and a safety seat, and that he has been harassed for using his wheelchair and denied access to it. Those allegations do not state a claim for *habeas corpus* relief. Petitioner has alternative civil remedies available to him for denial of handicapped access. In addition, enjoining defendant from harassing petitioner or denying him access to his wheelchair would provide him with an adequate remedy for the last two allegations.").

Cases in which this court or the Supreme Court have concluded that habeas corpus was the only appropriate remedy, in contrast, generally have involved ongoing concerns about health or safety. *See, e.g., Bedell v. Schiedler*, 307 Or 562, 770 P2d 909 (1989) (alleged failure to provide adequate ventilation and circulation of clean air caused the petitioner to suffer clogged sinuses, severe headaches, dry and irritated skin, and a sore throat); *Fox v. Zenon*, 106 Or App 37, 41, 806 P2d 166 (1991) (prisoner's allegations that he was suffering from a mental illness and severe depression that had led to numerous suicide attempts and that he was being denied psychological care stated a cognizable claim because there was no other timely remedy available); *Moore v. Peterson*, 91 Or App 616, 618, 756 P2d 1261 (1988) (allegations regarding heart disease and chest pain).

■       Here, as noted, plaintiff neither challenges the conditions of confinement in the IMU as violating his constitutional rights, nor does he assert that he is suffering from dangerous or unhealthy conditions. He challenges only the procedure followed in assigning him to the IMU. Such a challenge can be brought as an action under 42 USC section 1983.[3] Indeed, in *Keenan v. Hall*, 83 F3d 1083 (9th Cir 1996),

---

[3] 42 USC section 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a

*as amended*, 135 F3d 1318 (1998), an Oregon inmate did just that, raising in a section 1983 action the same IMU due process claim that plaintiff raises here. And, in *Armstrong v. Cupp*, 67 Or App 295, 300-01, 677 P2d 721, *rev den*, 297 Or 340 (1984), in which the habeas corpus plaintiffs challenged prison overcrowding, this court explained that "an injunction can be a timely and successful remedy for unconstitutional prison conditions," and noted—but did not resolve—the assertion that an action under 42 USC section 1983 also would be adequate. Because plaintiff has another adequate remedy, he was, as a matter of law, not entitled to habeas corpus relief on his due process claim.

Affirmed.

**EDMONDS, P. J.,** concurring.

The majority concludes that, "[b]ecause plaintiff has another adequate remedy, he was, as a matter of law, not entitled to habeas corpus relief on his due process claim." 209 Or App at 301. The rule of law arising from the majority's reasoning appears to be that a plaintiff, validly in custody, who alleges that he has been denied procedural due process of law before being subjected to further restraint of his person, is not entitled to seek habeas corpus relief under ORS 34.310 to 34.730 because 42 USC section 1983 provides an adequate remedy. In my view, that holding is inconsistent with the historical purpose of a writ of habeas corpus, as codified in the above statutes, to inquire into the cause of such restraint, and if illegal, to be immediately delivered therefrom. ORS 34.310. However, I would affirm the trial court's *sua sponte* dismissal of plaintiff's complaint for the failure to otherwise state sufficient facts to state a claim.

In substance, plaintiff's complaint filed in January 2005 alleges that his placements in the Intensive Management Units (IMU) at the Snake River Correctional Institution and the Oregon State Penitentiary occurred without procedural due process under oppressive conditions and were based on discriminatory actions by prison officials. Plaintiff

declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

also alleges that there exists "a need for immediate judicial scrutiny and there are no other plain, adequate or speedy remedies available for plaintiff to seek review of the challenged actions of the defendant."

Habeas corpus proceedings are governed by ORS 34.310 to 34.730. ORS 34.310 provides that "[e]very person imprisoned or otherwise restrained of liberty, within this state, except in cases specified in ORS 34.330, may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint, and if illegal, to be delivered therefrom." ORS 34.362 provides that,

> "[i]f the person is imprisoned or restrained by virtue of any order, judgment or process specified in ORS 34.330 and the person challenges the conditions of confinement or complains of a deprivation of rights while confined, the petition shall:
>
> "* * * * *
>
> "(2)   State facts in support of a claim that the person is deprived of a constitutional right that requires immediate judicial attention and for which no other timely remedy is practicably available to the plaintiff."

ORS 34.370 provides that, upon the filing of a legally adequate petition, a writ shall issue "without delay" directing the defendant custodian to show cause why the writ should not be allowed. ORS 34.580 provides that "[t]he court or judge before whom the party is brought on the writ shall, immediately after the return thereof, proceed to examine into the facts contained in the return, and into the cause of the imprisonment or restraint of such party." If no legal cause is found for the imprisonment or restraint, "the court or judge shall discharge such party from the custody or restraint under which the person is held." ORS 34.590.

Thus, "[t]he central characteristic of the writ of habeas corpus is the speed with which it triggers judicial scrutiny." *Bedell v. Schiedler*, 307 Or 562, 566, 770 P2d 909 (1989). The majority, however, affirms the trial court's *sua sponte* dismissal of plaintiff's complaint on the basis that plaintiff has an adequate remedy under section 1983 even though he had pleaded that he has no other adequate

"speedy" remedy. It reasons that plaintiff "challenges only the procedure followed in assigning him to the IMU. Such a challenge can be brought as an action under 42 USC section 1983." 209 Or App at 300 (footnote omitted). I disagree with the majority's reasoning for the reasons that follow.

First, the trial court's authority to dismiss a petition *sua sponte* is circumscribed in this case by ORS 34.370(6) and (7). Subsection (6) provides that "[t]he court may on its own motion enter a judgment denying a meritless petition brought under ORS 34.310 to 34.370." Subsection (7) defines a "meritless petition" as "one which, when liberally construed, fails to state a claim upon which habeas corpus relief may be granted." Thus, a trial court's *sua sponte* dismissal of a petition for a writ of habeas corpus is reviewed to determine whether, "when viewed most favorably to plaintiff, the pleadings and related inferences allege a legally sufficient claim." *Billings v. Gates*, 133 Or App 236, 240-41, 890 P2d 995 (1995), *aff'd on other grounds*, 323 Or 167, 916 P2d 291 (1996). Second, even when a prisoner is validly in custody, a writ of habeas corpus is available to challenge a further imprisonment or restraint of his person that is unlawful. *Penrod/Brown v. Cupp*, 283 Or 21, 28, 581 P2d 934 (1978).

Here, plaintiff alleges a further restraint of his person without procedural due process, *i.e.*, his placement in IMU, and that he has no other "adequate or speedy" remedy to challenge that restraint. In my view, an ordinary civil action seeking injunctive relief is neither a timely nor an adequate remedy given that defendant would remain in IMU at the will of defendant during the pendency of such an action. Indeed, in *Bedell*, the court stated, in holding that the trial court erred in ruling that plaintiff had "reasonably available alternative legal remedies," that

> "[w]e cannot find that plaintiff is required to endure additional weeks, months, or perhaps years, of the unconstitutional conditions pleaded in her replication while pursuing tort claims against this defendant, the state, or other potential defendants."

307 Or at 569. That reasoning is applicable to this case where plaintiff contends that the conditions of IMU are punitive in

nature and that he has been subjected to "further imprisonment" without the process guaranteed by the Due Process Clause of the United States Constitution.

None of the cases relied on by the majority dictates a contrary result. *Keenan v. Peterson*, 307 Or 323, 767 P2d 441 (1989), involved a challenge to the monitoring of telephone calls by prison officials. *Gage v. Maass*, 306 Or 196, 759 P2d 1049 (1988), involved credit for time served in jail prior to the petitioner's transfer from the custody of the sheriff to the custody of the Corrections Division; the credit, however, would not have entitled him to actual release. *Weidner v. Zenon*, 124 Or App 314, 862 P2d 550 (1993), concerned the denial of handicap access to a prison inmate. *Armstrong v. Cupp*, 67 Or App 295, 677 P2d 721, *rev den*, 297 Or 340 (1984), involved prison overcrowding. For the most part, the above cases involved allegations that the conditions of each prisoner's custody were unconstitutional where the conditions themselves did not require immediate scrutiny. In contrast, this is the kind of case that involves further imprisonment under alleged punitive conditions without due process of law and therefore presents the need for immediate judicial scrutiny.

It does not, however, necessarily follow from the fact that plaintiff had no other adequate remedy than habeas corpus to challenge his restraint in IMU that he has pleaded an entitlement to relief. Whether restraint in a unit like IMU is unlawful will depend on the particular facts of a case. In general, prison officials have broad administrative and discretionary authority over the institutions they manage, and lawfully incarcerated persons retain only limited protected liberty interests under the Due Process Clause. *Wolff v. McDonnell*, 418 US 539, 94 S Ct 2963, 41 L Ed 2d 935 (1974). Thus, the transfer of an inmate to a more restrictive unit for nonpunitive reasons is held to be well within the terms of confinement contemplated by a prison sentence, *i.e.*, to protect the prisoner's safety, to protect other inmates from a particular prisoner, to break up potentially disruptive groups of inmates, or to await later classifications or transfer. *Id.* By itself, the Due Process Clause confers no liberty interest in freedom from state action "within the sentence imposed" and no right to remain in the general prison population. *Hewitt v. Helms*, 459 US 460, 468, 103 S Ct 864, 74 L Ed 2d 675 (1983).

Nonetheless, states may under certain circumstances create liberty interests that are protected by the Due Process Clause,

> "[b]ut these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause by its own force, * * * nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Sandin v. Conner*, 515 US 472, 484, 115 S Ct 2293, 132 L Ed 2d 418 (1995).

In this case, plaintiff's complaint, even when liberally construed, does not allege facts that demonstrate that he is indeed subject to atypical and significant hardships in IMU that differ from the ordinary incidents of prison life, as *Sandin* requires. One of the requirements for a legally cognizable petition for habeas corpus relief under ORS 34.360 is that a petition must state more than mere conclusions; it must allege with particularity facts, which, if true, would entitle the plaintiff to relief. *Bedell*, 307 Or at 566. For instance, in *Troxel v. Maass*, 120 Or App 397, 853 P2d 294 (1993), the plaintiff challenged in a habeas corpus proceeding his placement in IMU based on 11 conditions that he contended were punitive in nature and therefore implicated due process. First, we held that, with the exception of his claim alleging improper placement in IMU, the plaintiff's allegations did not state facts that supported his claim that he had been deprived of a constitutional right. *Id.* at 399. With regard to the remaining claim, we ruled that the plaintiff had "no constitutional right to placement outside of IMU. Therefore, his argument that he has a right to a hearing concerning his placement in IMU fails." *Id.* at 400.

Our decision in *Troxel* should be understood as an application of the applicable standard of review to the specific facts alleged in the plaintiff's claim. Similarly, the rule that a plaintiff must plead more than mere conclusions applies here. Plaintiff alleges, in part:

> "IMU is a punishment unit[.] * * * Because IMU is a punishment unit, my placement in IMU denies me Due Process rights in a hearing, such as a notice in accordance with due

process, the right to be heard, the right to question witnesses, to have documentary and physical evidence, and a prompt hearing[.]"

Plaintiff also alleges that he was involved in a fight with another inmate, a hearing was held, and, as a result, he received sanctions including 180 days in a segregation unit, a fine, and loss of privileges and good time. Thereafter, apparently, he was transferred to IMU. But his allegation that IMU is a "punishment unit" is a mere conclusion. Because plaintiff does not plead how the decision to transfer him to IMU or the conditions of IMU infringe on a liberty interest conferred on him by the state, his complaint was properly dismissed by the trial court.

I also agree with the trial court's rulings regarding plaintiff's other claims and therefore would affirm the trial court's dismissal of plaintiff's complaint.